IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 18, 2006 Session

# IN RE:  ESTATE OF CLIFFORD FRANKLIN BAKER, ET AL. v. LEE KING, ET AL.

**A Direct Appeal from the General Sessions Court for Madison County**
**No. 02-12576     The Honorable Stephen Beal, Judge**

**No. W2005-00847-COA-R3-CV - Filed May 4, 2006**

This appeal involves a challenge to the validity of an antenuptial agreement.  Executors under the decedent's Will filed a petition in the General Sessions Court of Madison County, Probate Division, to have Will admitted to probate.  Decedent's wife then filed a notice and petition for elective share, for specific property, year's support, homestead, and expedited hearing.  The Executors, also beneficiaries under decedent's Will, opposed the petition based on an antenuptial agreement the wife had entered into with the decedent prior to their marriage, and the wife challenged the enforceability of the antenuptial agreement.  Following a hearing, the court upheld the validity of the antenuptial agreement, finding that the wife entered into the agreement knowledgeably and that the doctrine of equitable estoppel prohibited the wife from contesting the antenuptial agreement. Wife appeals. The dispositive question before this Court is whether the evidence preponderates against the trial court's finding that the antenuptial agreement was valid and enforceable.  We conclude that the record and applicable law do not support the trial court's decision to enforce the antenuptial agreement.  We reverse and remand this case to the probate court for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the General Sessions Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

J. Steven Anderson of Memphis, Tennessee for Appellant, Tommie Baker

Harold F. Johnson of Jackson, Tennessee for Appellees, Lee King and Baker King

**OPINION**

Tommie Baker ("Wife" or "Appellant") and Clifford Franklin Baker ("Husband" or "Decedent") were married on September 5, 1976. The couple had known each other for approximately ten years, and had dated for five years prior to their marriage. Wife was employed as a waitress and Husband owned and operated a gas station. On August 31, 1976, six days prior to the marriage, Husband picked Wife up at her home and drove her to the office of his attorney, Mr. Dick Nunn. Mr. Nunn indicated to Wife that Husband wanted her to sign a document that Mr. Nunn had prepared. Wife testified at trial that she signed the document, an antenuptial contract, in the presence of Husband and Mr. Nunn and left the office. The antenuptial agreement reads:

THIS CONTRACT made and entered into on this the 24th day of August, 1976, but actually executed on the day this instrument bears date, by and between Clifford F. Baker, who will hereinafter be referred to and called the Party of the First Part, and Tommie Neal, who will hereinafter be referred to and called the Part of the Second Party, both of Jackson, Madison County, Tennessee. WITNESSETH:

WHEREAS, the parties hereto contemplate marriage with each other and are desirous of entering into this contract and agreement for the purpose of insuring harmony in their marriage, and freedom of action one from another in the management of their respective business affairs, after said marriage; and,

WHEREAS, the Party of the First Part is seized and possessed of valuable property, both real and personal, and each of the parties hereto have an earning capacity, and each of said parties is desirous of retaining absolute and full control of their said properties, real, personal and/or mixed, and of relinquishing all rights of every kind and character whether by virtue of their marriage to each other, of descent and distribution, by dower or curtesy, and all other rights of every kind and character arising from their said marriage in the property of the other. THEREFORE:

KNOW ALL MEN BY THESE PRESENTS, that for and in consideration of said marriage, the mutual covenants and agreements between the parties hereto and contained herein, and the sum of One Dollar ($1.00), cash in hand each to the other paid, the receipt of all of which is hereby acknowledged, the said Clifford F. Baker hereby covenants, contracts, and agrees and does by these presents release, remise and relinquish all claims of curtesy, inheritance, year's support, exempt property, descent and distribution, and all other marital rights of every kind and character in and to the real and personal property of the said Tommie Neal now owned or hereafter acquired and to all other rights or claims in or to the estate of the said Tommie Neal during her life time and at her death, which may in any manner arise or accrue by virtue of their said marriage; and the said

Tommie Neal hereby covenants, contracts and agrees and does by these presents release, remise and relinquish all claims of dower, inheritance, year's support, exempt property, descent and distribution, an all other marital rights of ever kind and character in and to the real and personal property of the said Clifford F. Baker during his life time and at his death, which may in any manner arise or accrue by virtue of their said marriage.

The parties hereto mutually agree further to execute and acknowledge, upon the request of the other, or of his or her heirs, devises, personal representatives or assigns, any and all proper instruments of release or conveyance to enable each party hereto, or their devisees, personal representatives or assigns, to bargain, sell and convey or devise or will, or otherwise dispose of any and all property, real, personal and/or mixed, wheresoever situated now owned or hereafter acquired free and clear of any and all real or apparent right of the other that might otherwise accrue by virtue of the said contemplated marriage.

IN WITNESS WHEREOF, the parties hereto have hereunder subscribed their names, this the 31st day of August, 1976.

The agreement was signed by both Clifford F. Baker and Tommie Neal and was notarized by Maggie Mae Pittman.

Husband had a Will drawn up by his attorney, Mr. Nunn, and signed it on April, 4, 1980. The antenuptial agreement was incorporated into the 1980 Will by the following language:

On the 31st day of August, 1976, my said wife, Tommie Baker, then Tommie Neal, and I entered into an ante-nuptial agreement settling our respective property rights. With the exception of the bequest contained in this Item of my will, I do hereby ratify, republish and reaffirm said ante-nuptial agreement.

Husband executed subsequent Wills in 1981, 1986 and 2002, each revoking all prior wills. In the 1981, 1986 and 2002 Wills, Husband ratified the antenuptial agreement signed by the parties on August 31, 1976.

On November 28, 2001, Wife filed a complaint for absolute divorce in the Chancery Court of Madison County. However, Husband died on September 7, 2002, prior to a disposition of the divorce action.

On November 4, 2002, the Executors of the Estate of Clifford Baker, Lee King and Baker King ("Executors" or "Appellees"), filed a petition in the General Sessions Court of Madison

County, Probate Division, to have Clifford Baker's May 29, 2002 Will admitted to probate. Because of the relevance of the information contained in the 2002 Will, portions are reprinted below. The Will reads, in pertinent part, as follows:

> I, Clifford Franklin Baker, better known as Cliff Baker, a resident of Jackson, Madison County, Tennessee, being of sound mind and disposing memory, and being fully aware of the uncertainty of life, do hereby make, publish and declare this to be my Last Will and Testament, and do hereby revoke all former Wills and Testamentary Dispositions heretofore made by me.
>
>         *       *       *
>
> I am presently married to TOMMIE GAZELLE BAKER; however, TOMMIE GAZELLE BAKER filed a Complaint for Absolute Divorce on November 28, 2001, naming me as the Defendant. There was filed, in my behalf, an Answer and Counter-Claim on December 7, 2001. There was a hearing conducted on the 10th day of December, 2001, with the Order thereon being entered on the 16th day of January.
>
>         III.
>
> Prior to the marriage of CLIFFORD F. BAKER and TOMMIE NEAL, now, TOMMIE BAKER, the parties had executed an Ante-Nuptial Agreement signed by the parties on the 31st day of August, 1976, a copy of which is attached hereto, and marked Exhibit I to this Last Will and Testament. The Ante-Nuptial Agreement was kept with my personal belongings at my home at 36 Chickasaw Drive. While I was in the hospital, my wife, TOMMIE GAZELLE BAKER, occupied my home to my exclusion and testified under oath at the hearing referred to above, conducted on December 10, 2001, that there was a Pre-Nuptial Agreement at the time of the marriage, but that the Pre-Nuptial Agreement was not in the drawer of the chest of drawers where other papers of CLIFFORD BAKER were kept.
>
>         *       *       *
>
> Since my divorce from TOMMIE GAZELLE BAKER is not final as of the date of the execution of this Will, I expect there to be a contest of this Will, by TOMMIE GAZELLE BAKER, and hereby declare that I believe the Ante-Nuptial Agreement executed by me, CLIFFORD BAKER, and TOMMIE GAZELLE BAKER on the 31st day of August, 1976, to be valid and that the original of same has now been discovered.
>
> Since I am assuming and anticipating that there will be an attempt made by TOMMIE GAZELLE BAKER to contest this Will, or an attempt by my wife, hopefully soon to be my ex-wife, TOMMIE

-4-

GAZELLE BAKER, to claim an elective share of my estate, should I die before the divorce is final, I wish to explain why this Will provides as it does.

My first wife, ANNIE MARY BAKER and I had no children, nor do I have children by TOMMIE GAZELLE BAKER.

My first wife's relative had children for which there were insufficient funds to support them, namely, JOHNNY GLISSON, NANCY GLISSON, AND MARY ANN GLISSON. My first wife, ANNIE MARY BAKER, and I did not adopt these children, but did care for them, and treated them as if they were born of our marriage. MARY ANNE GLISSON lived with me and my first wife until her marriage to JOSEPH LEON (RED) KING, who is now deceased. MARY ANN KING and JOSEPH LEON (RED) KING had two children; JOSEPH LEON KING II and RICHARD BAKER KING. I have treated MARY ANN GLISSON KING, now MARY ANN RENEE, as my daughter since she came into my home, and I have treated JOSEPH LEON KING II, and RICHARD BAKER KING as my grandchildren since their birth. MARY ANN GLISSON KING, now MARY ANN RENEE, has treated me as her father since she came into my home, and JOSEPH LEON KING II, and RICHARD BAKER KING, have treated me as their grandfather since their birth.

It is my intention in making this Will to provide from the funds of which I die seized and possessed, for MARY ANN RENEE, formerly MARY ANN GLISSON KING, and JOSEPH LEON KING II, and RICHARD BAKER KING.

In the remaining portions of the Will, the Decedent bequeaths his real and personal property to Mary Ann Renee, Joseph Leon King II, and Richard Baker King.

Following the Appellees' petition to probate the Decedent's 2002 Will, Wife filed a notice and petition for elective share, for specific property, year's support, homestead, and expedited hearing. The Appellees opposed the petition based on the Antenuptial Agreement the Wife had entered into with the Decedent prior to their marriage, and Wife challenged the enforceability of the Antenuptial Agreement.

By agreement of the parties, the validity of the Antenuptial Agreement dated August 31, 1976, being determinative of most of the issues in the matter, was tried on October 25, 2004. The Appellees offered as proof the original Antenuptial Agreement signed by Clifford F. Baker and Tommie Neal. Both parties agreed that there was no written disclosure of Husband's assets at the time of the signing of the Antenuptial Agreement as evidenced by the document itself. However,

Appellees argued that Wife had independent knowledge of the nature, extent, and value of Husband's holdings at the time she signed the agreement. Appellees alleged that the fact that there was a lengthy courtship between the parties, and the fact that Wife had been married three times prior to her marriage to Mr. Baker, provided evidence that Wife had ample opportunity and reason to discover the value of Husband's assets. Furthermore, Appellees asserted that, because Husband's attorney, Mr. Dick Nunn,[1] was a reputable attorney and "an honest man," it could be presumed that Mr. Nunn would have divulged the value of Husband's assets, as well as the effects of the Antenuptial Agreement as it pertained to the property rights of the parties. Leon King and Baker King testified that the Decedent informed them of the existence of the Antenuptial Agreement and Decedent's intent to leave his business, a gas station, and a piece of real property located on Campbell Street to them upon his death. Leon King and Baker King also testified that they never had any conversations with Wife regarding the Antenuptial Agreement or assets of the Decedent.

Wife's counsel argued that Wife did not have independent knowledge of the nature, extent, and value of Husband's assets at the time she signed the Antenuptial Agreement. Wife testified that at the time of their engagement, she "knew he had a savings, . . . and a house and a car. I didn't know what any of them - - any of them was worth." Further, Wife testified that, at the time the Antenuptial Agreement was signed, neither Husband nor his attorney gave her any information about Husband's assets, income, value of his business, or the existence of rental property. Wife also testified that she was not told to seek independent counsel in regards to the Antenuptial Agreement, and that she did not seek independent counsel on her own.

At the conclusion of the hearing, the trial court made the following statement from the bench:

> The Court: Gentlemen, you all are going to have the opportunity after the transcript is furnished to you to respond - - or excuse me – to file a post-trial brief with any supporting law that you would like to have. Upon your memorandums of fact - - I don't know if you want to do it more of a findings of fact or however you want to do it, whichever way you all prefer.
>
> The other thing I have, I'm going to go ahead and give you an idea just here today of how we're looking at this situation.
>
> First off, from this hearing today and for the purposes of this hearing, I'm going to find that there was indeed an antenuptial agreement, prenuptial agreement, that was entered into. I've listened closely about the - - about any evidence concerning whether or not it had been waived or voided at any point prior to the event of Mister - - on his part, by Mr. Baker. I find there to be no credible evidence at this time that that was done.

---

[1]  Mr. Nunn died prior to the filing of Wife's petition in the present case.

The issues that it appears like to me that we're going to be having to address on this is, first off, was there sufficient disclosure of the assets at that time.

The other thing that you all will address is the relative positions of the parties at that time as far as financial and education and those type of things.

The other thing is, if it's found by me that there was sufficient disclosure, I think - - I read through those cases, and it appeared like that I would like for you all to address - - I don't know whether the legal doctrine is still in effect. Excuse me. I know that it's not looked on as well as it was thirty or forty, fifty years ago, but the issue concerning the laches issue, about whether or not that over a period of time that - - whether - - in this particular incident, whether laches would attach in this matter.

So, you all can see kind of where I think you - - what I'm interested in. I want you to address those issues for me the best you can.

And as you all know, when the parties became engaged and discussed the marriage, as you all well know, the confidential relationship began then and there's no question about there being an arm's-length deal. I mean, there was not an arm's length discussion, much less an arm's length transaction.

Both parties submitted post-trial memorandums as the trial judge requested, which are not part of the record, and Wife filed a response to the post-trial memorandum of the Appellees, which is also not a part of the record on appeal. On January 28, 2005, the trial court sent the following to the attorney's for both parties:

Gentlemen:

Mr. Baker was an uneducated but reasonably successful small business owner. Mrs. Baker was at the time of this marriage, a lady who had not lead an insulated or isolated life. She was a person who owned real property and stocks and had obvious business acumen. These parties were not separated by a great gulf of position or wealth or intelligence. The parties would appear to have entered into the marriage on a relevantly even footing. Neither party possessed an obvious overwe[lm]ing advantage over the other.

This Court questions Mrs. Baker's complete forthrightness and credibility concerning her testimony about the Ante-Nuptial Agreement and its signing. Mrs. Baker gave evasive answers to many

-7-

simple and straightforward questions which leads this court to question her credibility.

The attorney for the King brothers presents an equitable argument for the support of the agreement. Mrs. Baker had approximately 26 years of married life to question the existence and/ or validity of the Ante-Nuptial Agreement. She chose to sit upon her rights. In all respect, Mrs. Baker was at least as sophisticated as Mr. Baker. This Court finds that Mrs. Baker had actual knowledge of the majority of or all of Mr. Baker's assets at the time of marriage. She had been associated with him for many years prior to this marriage and was aware of his assets. And, after a few years of marriage, she had full knowledge of all assets, even signing rental agreements. This Court finds no genuine disparity in the sophistication of the parties. This Court finds that the wife had independent actual knowledge of the great majority of assets prior to marriage and received full knowledge after the marriage. Further, Mrs. Baker failed to take appropriate action if she was dissatisfied with the agreement. Mrs. Baker had financial ability and business acumen to take issue with the Ante-Nuptial Agreement over the many years, but failed to do so.

Initially, I find that there was actual knowledge of assets prior to entering into the Ante-Nuptial Agreement. Further, the parties were relatively equal with no disparity of intelligence in business matters. Further, I do have serious questions concerning Mrs. Baker's credibility. Further, even without the finding that there was a valid agreement, I find that the doctrine of Equitable Estoppel is supported by the relevant testimony in this case. The Ante-Nuptial Agreement under this particular set of facts is found valid.

Please draw the Order from the Court's findings.

/s/ Steve Beal
General Sessions Judge

On March 16, 2005, the trial court entered the following Order:

This cause came on to be heard on this 16th day of March, 2005, before the Honorable STEVE BEAL, Judge, Sitting by Interchange for the Honorable CHRISTY RAUCHLE LITTLE, Judge, holding the General Sessions Court for Madison County, Tennessee, at Jackson, Davison II, Probate, by agreement of the parties for the limited purpose of determining the validity of an Ante-

Nuptial Contract entered into by the parties on the 31st day of August, 1976, a copy of which is attached hereto, testimony of TOMMIE BAKER, LEE KING BAKER KING, and A. Russell Larson, the reading into the record of certain portions of the deposition of TOMMIE BAKER, presentation of certain exhibits, submission of Post-Trial Memorandum in behalf of TOMMIE BAKER and the Estate of CLIFFORD FRANKLIN-BAKER, Response to the Post-Trial memorandum of the Estate of CLIFFORD FRANKLIN BAKER filed in behalf of TOMMIE BAKER, and a review of the record as a whole, from all of which the Court, by correspondent dated January 28, 2005, advised the parties through their attorneys of the Court's decision in this matter, a copy of which is attached hereto and incorporated into this Order.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Ante-Nuptial Agreement dated August 31, 1976, a copy of which is attached hereto, is valid and binding upon the parties. Pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, this is a Final Judgment.

This costs of this matter are adjudged against the Estate of Clifford Franklin Baker, for all of which let execution issue.

ENTER this the 16th day of March, 2005.

Wife filed a timely appeal of the trial court's March 16, 2005 Order on April 8, 2005. On appeal, Wife presents the following issues for review, as stated in her brief:

1. Whether the Trial Court erred in finding that Appellant (Wife) had actual knowledge of husband's assets prior to entering into the Ante-nuptial Contract?

2. Whether the Trial Court erred in finding that the Doctrine of Equitable Estoppel prevents Appellant from challenging the validity of the Ante-nuptial Contract?

3. Whether the Trial Court erred in allowing irrelevant evidence to be presented at trial?

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. *See* Tenn. R. App. P. 13(d). We will also give great weight to a trial court's factual findings that rest on determinations of credibility. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker,* 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). However, if the trial judge has not made a specific finding of fact on a particular matter, we will review the record to determine

where the preponderance of the evidence lies without employing a presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997). The presumption of correctness in Tenn. R. App. P. 13(d) apples only to findings of fact, not to conclusions of law. Accordingly, appellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues. *Johnson v. Johnson,* 37 S.W.3d 892, 894 (Tenn. 2001); *Nutt v. Champion Int'l Corp.,* 980 S.W.2d 544, 547 (Tenn. Ct. App. 1998).

We will first address Issue Number 2.

**Whether the Trial Court erred in finding that the Doctrine of Equitable Estoppel prevents Appellant from challenging the validity of the Ante-nuptial Contract?**

Wife asserts that the trial court erred by concluding that the Doctrine of Equitable Estoppel prevents her from challenging the validity of the Antenuptial Agreement for two reasons. First, Wife asserts that the equitable doctrines of estoppel and laches are affirmative defenses under Tenn. R. Civ. P. 8.03 and, as such, must be set forth specifically in responsive pleadings. Second, Wife argues that, even if the doctrines of estoppel or laches were to be considered by the trial court, they should not apply because, under Tennessee law, to apply such doctrines "premised on a delay in a manner that would effectively force a spouse who wanted to challenge the enforceability of an antenuptial agreement to do so prior to the dissolution of the marriage," is contrary to the public policy of Tennessee. The Appellees argue that the doctrines of estoppel and laches operate to prevent Wife from challenging the validity of the Will because application of the doctrines rests with the trier of fact, and because Wife knew the value of Husband's property and did not attempt to assert her right to challenge the Antenuptial Agreement throughout their twenty-six-year marriage.

Estoppel, based on principles of equity, is generally described as:

> . . . the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

*Beazley v. Turgeon,* 772 S.W.2d 53, 58 (Tenn. Ct. App. 1988), quoting *Church of Christ v. McDonald,* 171 S.W.2d 817, 821 (Tenn. 1943). The purpose of equitable estoppel is:

> . . . to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed, or been enforceable by other rules of law, unless prevented by an estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel.

*Baliles v. Cities Service Co.,* 578 S.W.2d 612, 624 (Tenn. 1979). Laches is established when there has been "neglect or omission to assert a right which, taken in conjunction with a lapse of time, causes prejudice to the adverse party." *First American Bank of Nashville v. Woods,* 734 S.W.2d 622 (Tenn. Ct. App. 1987), perm. app. denied, (1987). Generally, the doctrine of laches applies to actions not governed by a statute of limitations. *Dennis Joslin Co. v. Johnson,* 138 S.W.3d 197, 201 (Tenn. Ct. App. 2003). Additionally, laches is based on a finding of inexcusable, negligent, or unreasonable delay on the party asserting the claim which results in prejudice to the defending party. *Archer v. Archer,* 907 S.W.2d 412, 416 (Tenn. Ct. App. 1995). Laches requires that the delay be inexcusable. *Id.* It is an equitable defense which requires the finder of fact to determine whether it would be inequitable or unjust to enforce the claimant's rights. *Id.*

Generally, a trial court's application of the equitable doctrines of estoppel or laches lies within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.,* 715 S.W.2d 41, 46 (Tenn. 1986). "A trial court abuses its discretion whenever it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.' " *Clinard v. Blackwood,* 46 S.W.3d 177, 182 (Tenn. 2001) quoting *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn. 1999). This standard requires that we determine "whether the lower court's exercise of its discretion went beyond the bounds of a fair exercise of discretion." *Id. See also State v. Gilliland,* 22 S.W.3d 266, 273 (Tenn. 2000) ("Although a decision made under this standard will not be lightly reversed on appeal, the discretion of the trial court is not without limits."). In this case, however, whether the equitable doctrine of estoppel or laches is available as a defense is an issue of law, subject to *de novo* review, with no presumption of correctness. *See Rutledge v. Barrett,* 802 S.W.2d 604, 605 (Tenn. 1991); *see also Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d 79, 80 (Tenn. 1996).

Under Tennessee law the equitable defenses of estoppel and laches, as well as other affirmative defenses, must be asserted in an appropriate pleading. **Tenn. R. Civ. P. 8.03.** Rule 8.03, Affirmative Defenses, reads as follows:

> In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, express assumption of risk, comparative fault (including the identity or description of any other alleged tortfeasors), discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim

> or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation. [2]

Pleadings play an important role in litigation. The pleadings required by the Tennessee Rules of Civil Procedure provide the vehicle for identifying and refining the matters at issue in a lawsuit. *Rawlings v. John Hancock Mut. Life Ins. Co.,* 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001). They provide the parties and the trial court with notice of the claims and defenses involved in the case. *Id.*

We do not find in the record any showing that the equitable defenses of estoppel or laches were raised in the trial court. On January 24, 2003, the Appellees filed a response to Wife's notice and petition for elective share, for specific property, year's support, homestead and expedited hearing. The Appellees do not raise the affirmative defense of estoppel or laches in their response, and, more important, do not set forth facts sufficient to constitute this defense. Neither were the affirmative defenses argued by Appellees at trial. Recognizing the mandatory nature of Tenn. R. Civ. P. 8.03, the courts have consistently held that affirmative defenses that are not properly raised are waived. *Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin,* 765 S.W.2d 743, 744 (Tenn. Ct. App. 1987); *Barrton Scientific, Inc. v. Moss,* 542 S.W.2d 375, 379 (Tenn. Ct. App. 1975); Tenn. R. Civ. P. 12.08. It is clear that a "party waives all defenses and objections which the party does not present either by motion . . . , or, . . . in the party's answer or reply." Tenn. R. Civ. P. 12.08. *See Rawlings,* 78 S.W.3d at 300 ("The failure to assert a claim or defense in a timely manner is deemed a waiver of the right to rely on the claim or defense later in the proceeding."). In light of the fact that the equitable defenses of estoppel and laches were not specially pled, we find that the trial court erred in finding that the Doctrine of Equitable Estoppel prevents Wife from challenging the validity of the Antenuptial Agreement.

Furthermore, even if the equitable doctrines of estoppel and/or laches had been properly pled by the Appellees, it would not preclude Wife from challenging the validity of the Antenuptial Agreement. The Tennessee Supreme Court has previously suggested that it would be contrary to the public policy of Tennessee to apply the equitable doctrines of estoppel or laches premised on delay in a manner that would effectively force a spouse who wanted to challenge the enforceability of an antenuptial agreement to do so prior to the dissolution of the marriage by death or divorce. *Baker v. Baker,* 142 S.W.2d 737, 748 (Tenn. 1940) ("There could hardly be anything better calculated to bring about domestic discord than for a wife [or husband] to do what the defendants in this case insist the complainant should have done [i.e., challenge the enforceability of the antenuptial agreement during the marriage]. It would hardly be in keeping with sound public policy to place such a burden upon a spouse.").

---

[2] The Advisory Commission Comment that accompanies Tenn. R. Civ. P. 803 reads:
Rule 8.03 lists affirmative defenses which must be raised in a pleading to a preceding pleading. The rule provides that the party relying upon a matter constituting an avoidance or affirmative defense must set forth the facts constituting such defenses in short and plain terms, just as under Rule 8.02 the party must set forth express denials of claims asserted by the adverse party.

-12-

This issue is without merit.

**Whether the Trial Court erred in finding that Appellant (Wife) had actual knowledge of husband's assets prior to entering into the Ante-nuptial Contract?**

Wife asserts that the trial court erred by concluding that the Antenuptial Agreement is enforceable because the evidence does not support the conclusion that Wife had independent knowledge of the full nature, extent, and value of Husband's property and holdings prior to the marriage. Wife argues that T.C.A. 36-3-501, as interpreted by the Tennessee Supreme Court in ***Randolph v. Randolph,*** 937 S.W.2d 815 (Tenn. 1996), requires that the trial court find that Wife had independent knowledge of the full nature, extent and value of the Husband's holdings prior to the signing of the document. Wife argues that the Appellees did not put forth sufficient evidence to prove that she had the requisite independent knowledge of Husband's assets prior to signing the Antenuptial Agreement, nor did the trial court reach such a conclusion as evidenced by its preliminary ruling issued on January 28, 2005. Further, Wife argues that the burden of proof is on the party seeking to uphold the validity of the Antenuptial Agreement, and that such burden has not been met by the Appellees. It is well settled that antenuptial agreements are enforceable in Tennessee if certain prerequisites are met. T.C.A. § 36-3-501; ***Bratton v. Bratton,*** 136 S.W.3d 595, 599 (Tenn. 2004); ***Randolph v. Randolph,*** 937 S.W.2d 815, 819 (Tenn. 1996). Because an engagement to marry creates a confidential relationship between the contracting parties, an antenuptial agreement entered into after the engagement must be attended by the utmost good faith. ***Baker v. Baker***, 142 S.W.2d at 745–46. To be enforceable, an antenuptial agreement must have been entered into freely, knowledgeably, and in good faith and without the exertion of duress or undue influence.[3] T.C.A. § 36-3-501[4]; ***Randolph v. Randolph,*** 937 S.W.2d at 819; ***Cary v. Cary,*** 937 S.W.2d 777, 782 (Tenn. 1996). The "knowledge" element of T.C.A. § 36-3-501 has been interpreted by the Tennessee Supreme Court as requiring that the party seeking to enforce an antenuptial agreement to prove "by a preponderance of the evidence, either that a full and fair disclosure of the nature, extent, and value

---

[3] T.C.A. § 36-3-501 was not enacted until 1980, however its goal was to codify the common law requirement that in order for an antenuptial agreement to be valid, the party claiming validity of the agreement must prove that there was a full disclosure of the nature, extent, and value of the spouse's property or that the other spouse had independent knowledge thereof without such disclosure. See *Baker v. Baker,* 142 S.W.2d 737 (Tenn. Ct. App. 1940). The requirements of the statute have been applied to antenuptial agreements written prior to its enactment. *See Williams v. Williams,* 868 S.W.2d 616 (holding that antenuptial agreement entered into in 1971 was invalid based on mandate of T.C.A. § 36-3-501 requiring full disclosure and extent of spouses property).

[4] T.C.A. § 36-3-501 reads as follows:

Notwithstanding any other provision of law to the contrary, except as provided in § 36-3-502, any antenuptial or prenuptial agreement entered into by spouses concerning property owned by either spouse before the marriage which is the subject of such agreement shall be binding upon any court having jurisdiction over such spouses and/or such agreement if such agreement is determined, in the discretion of such court, to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse. The terms of such agreement shall be enforceable by all remedies available for enforcement of contract terms.

of his or her holdings was provided to the spouse seeking to avoid the agreement, or that disclosure was unnecessary because the spouse seeking to avoid the agreement had independent knowledge of the full nature, extent and value of the proponent spouse's holdings." ***Randolph v. Randolph,*** 937 S.W.2d at 821. The Supreme Court in ***Randolph v. Randolph*** provides this guidance for determining whether the knowledge requirement has been met when analyzing an antenuptial agreement:

> While disclosure need not reveal precisely every asset owned by an individual spouse, at a minimum, full and fair disclosure requires that each contracting party be given a clear idea of the nature, extent, and value of the other party's property and resources. . . In the absence of full and fair disclosure, an antenuptial agreement will still be enforced if the spouse seeking to avoid the agreement had independent knowledge of the full nature, extent, and value of the other spouse's property and holdings. Of course, the particular facts and circumstances of each case govern, to a great degree, the determination of knowledge. Some factors relevant to the assessment include, but are not limited to, the parties' respective sophistication and experience in business affairs, the duration of the relationship prior to the execution of the agreement, the time of the signing of the agreement in relation to the time of the wedding, and the parties' representation by, or opportunity to consult with, independent counsel. *Perspectives* at 18; *see, e.g., Norris v. Norris,* 419 A.2d 982, 985 (D.C. App.1980); *Del Vecchio,* 143 So.2d at 21; *Simeone,* 581 A.2d at 167.
>
> Though representation by independent counsel may be the best evidence that a party has entered into an antenuptial agreement voluntarily and knowledgeably, no state makes consultation with independent counsel an absolute requirement for validity. *Perspectives* at 18. Some states, however, require that each party have the *opportunity* to consult with legal counsel of his or her own choice, but do not require actual consultation for the agreement to be upheld. *See, e.g., Gant,* 329 S.E.2d at 116. Finally, some states hold that the presence or absence of independent counsel is just another factor to be considered when determining if the agreement was entered into knowledgeably. *Perspectives* at 22; *see, e.g., Ex Parte Walters,* 580 So.2d 1352, 1354 (Ala.1991); *Matter of Benker's Estate,* 416 Mich. 681, 331 N.W.2d 193, 198 (1982). It is in this last category that Tennessee is found. *Kahn,* 756 S.W.2d at 695.

***Randolph v. Randolph,*** 937 S.W.2d at 821-822.

The burden of proof to establish these elements rests with the party seeking to enforce the antenuptial agreement. *Id.* at 821. The existence of each element is a question of fact to be determined from the totality of the circumstances surrounding the negotiation and execution of the antenuptial agreement. ***Randolph v. Randolph,*** 937 S.W.2d at 821; ***Cary v. Cary,*** 937 S.W.2d 777, 782 (Tenn. 1996); ***Perkinson v. Perkinson,*** 802 S.W.2d 600, 603 (Tenn.1990). While the participation of independent counsel representing each party is not the sine qua non of enforceability, it provides the best assurance that the legal prerequisites will be met and that the antenuptial agreement will be found enforceable in the future. ***Randolph v. Randolph****,* 937 S.W.2d at 822.

In the present case, neither party asserts that Husband made a written disclosure of his assets at any time prior to, or at the time of, the signing of the Antenuptial Agreement. Thus, it is incumbent upon the Appellees to prove that Wife had independent knowledge of the full nature, extent, and value of Husband's property and holdings prior to entering into the Antenuptial Agreement. As the Tennessee Supreme Court stated in ***Randolph***, while the particular facts and circumstances of each case govern the determination of independent knowledge, some of the relative factors to consider include, but are not limited to, "the parties' respective sophistication and experience in business affairs, the duration of the relationship prior to the execution of the agreement, the time of the signing of the agreement in relation to the time of the wedding, and the parties' representation by, or opportunity to consult with, independent counsel." ***Randolph v. Randolph,*** 937 S.W. 2d. at 821.

The following relevant evidence relating to whether Wife had independent knowledge of the full nature, extent and value of Husband's property, at the time she signed the Antenuptial Agreement, was presented at trial. The Appellees asserted that Husband and Wife were equally sophisticated in business affairs when the couple married. Appellees offered proof that Wife had a junior college education, while Husband had either a fifth, or up to tenth, grade education. Wife owned a furnished home and stocks, and had a job as a waitress. Husband owned a service station, two houses, a car and assets in a savings account. It is uncontradicted that Husband and Wife knew each other for over ten years prior to their marriage and dated for the last five of those years. Also uncontested is the fact that Wife signed the Antenuptial Agreement five days prior to the wedding. The Appellees do not assert that Wife was represented by independent counsel, but ask the court to presume that "Dick Nunn [Husband's attorney], a fine lawyer , an honest man, would have gone over with [Wife] the effect of the Antenuptial Contract."

Wife confirmed that she and Husband dated for five years prior to the marriage. However, Wife stated that they never talked about finances. Wife testified that she did not know all holdings of Husband prior to signing the Antenuptial Agreement. Wife testified that she did not know that Husband owned a rental house until three years after they were married. In addition to a lack of knowledge concerning Husband's rental property, Wife testified that she did not know the value of Husband's gas station business or other assets. Further, Wife testified that the Antenuptial Agreement was signed five days before the wedding and that she and Husband had no advance discussion about the agreement prior to Husband taking her to his attorney's office. Wife also testified that she was not represented by counsel, nor was she given any opportunity to consult with counsel prior to execution of the Antenuptial Agreement.

-15-

The trial court made the following findings relative to the credibility of Wife's testimony:

> This Court questions Mrs. Baker's complete forthrightness and credibility concerning her testimony about the Ante-Nuptial Agreement and its signing. Mrs. Baker gave evasive answers to many simple and straightforward questions which leads this court to question her credibility.

As noted above, this Court must give great weight to a trial court's factual findings that rest on determinations of credibility. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker,* 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). Nonetheless, even if we exclude all of Wife's testimony, we still are faced with the determination of whether the Appellees have met their burden of proof. As discussed above, an antenuptial agreement is not enforceable unless the party seeking to uphold the agreement proves, by a preponderance of the evidence, either that a full and fair disclosure of the nature, extent and value of the spouse's holdings was provided to the spouse seeking to avoid the agreement, or that disclosure was unnecessary because the spouse seeking to avoid the agreement had independent knowledge of the full nature, extent, and value of the proponent spouse's holdings. *Randolph,* 937 S.W. 2d. at 821. In the present case, the burden of proof to establish that Wife had independent knowledge of the full nature, extent, and value of Husband's assets at the time she entered into the Antenuptial Agreement rests with the Appellees.

It is well settled that a the court speaks through its order. *See, e.g., Morat v. State Farm Mut. Auto. Ins. Co.,* 949 S.W.2d 692, 696 (Tenn. Ct. App.1997); *Ladd v. Honda Motor Co.,* 939 S.W.2d 83, 104 (Tenn. Ct. App. 1996). The trial court made the following findings in its order relevant to Wife's knowledge of Decedent's assets prior to and following the marriage:

> This Court finds that Mrs. Baker had actual knowledge of the majority of or all of Mr. Baker's assets at the time of marriage. She had been associated with him for many years prior to this marriage and was aware of his assets. And, after a few years of marriage, she had full knowledge of all assets, even signing rental agreements. This Court finds no genuine disparity in the sophistication of the parties. This Court finds that the wife had independent actual knowledge of the great majority of assets prior to marriage and received full knowledge after the marriage.
>
> *       *       *
>
> Initially, I find that there was actual knowledge of assets prior to entering into the Ante-Nuptial Agreement.

It is difficult from the order of the trial court to determine a precise finding of fact concerning Wife's knowledge of Husband's assets at the time she signed the Antenuptial Agreement. The trial court found that Wife had "independent actual knowledge of the great majority of assets prior to marriage and received full knowledge after the marriage." The trial court then went on to state that "I find that there was actual knowledge of assets prior to entering into the Ante-Nuptial Agreement." Thus, the trial court determined that Wife had some knowledge, but not full knowledge, of the assets at the time of signing the Agreement. As stated above, some of the relevant factors to consider in determining the independent knowledge of Wife include, but are not limited to "the parties' respective sophistication and experience in business affairs, the duration of the relationship prior to the execution of the agreement, the time of the signing of the agreement in relation to the time of the wedding, and the parties' representation by, or opportunity to consult with, independent counsel." *Randolph v. Randolph,* 937 S.W. 2d. at 821. Based on the trial court's finding as to Wife's credibility, we will exclude her testimony in our analysis. The trial court made the following findings relative to the parties respective sophistication and experience in business affairs:

> Mr. Baker was an uneducated but reasonably successful small business owner. Mrs. Baker was at the time of this marriage, a lady who had not lead an insulated or isolated life. She was a person who owned real property and stocks and had obvious business acumen. These parties were not separated by a great gulf of position or wealth or intelligence. The parties would appear to have entered into the marriage on a relevantly even footing. Neither party possessed an obvious overwe[lm]ing advantage over the other.

We defer to the trial court's finding on this issue and find that Husband and Wife were equally sophisticated in business affairs and finances. It is undisputed that the parties knew each other for over ten years prior to the marriage and dated for the last five of those years. It is proven, by the dates shown on the Antenuptial Agreement itself, that the Agreement was signed by the parties five days prior to the wedding. It is also uncontested that Wife was not represented by independent counsel, nor was it proven that Wife was given an opportunity to consult with independent counsel.[5] From the evidence, we conclude that Wife was aware of the nature of Husband's business affairs, and had a general knowledge of Husband's financial assets. While Tennessee does not require that a spouse have knowledge of the specific appraised values of the other spouse's assets, knowledge of the proponent spouse's overall net worth is necessary. *See Randolph v. Randolph*, 937 S.W.2d at 821 (stating that while disclosure need not reveal precisely every asset owned by an individual spouse, at a minimum, full and fair disclosure requires that each contracting party be given a clear idea of the nature, extent and value of the other party's property and resources); *Baker v. Baker,* 142 S.W.2d at 746 (finding that intended spouse's general knowledge of Husband's wealth was not sufficient to satisfy requirement of full disclosure). We find that the evidence presented by the Appellees is not sufficient to establish, by a preponderance of the evidence, that Wife had the

---

[5] While the Appellees would ask this Court to presume that Dick Nunn, Husband's attorney, as "a fine lawyer, an honest man", would have gone over the effect of the Antenuptial Agreement she was signing, and likely encouraged her to seek independent counsel, we are unable to make such assumptions from the evidence provided.

requisite independent knowledge of the full nature, extent, and value of Husband's assets at the time she entered into the Antenuptial Agreement as required under T.C.A. § 36-3-501. We find that the Appellees have failed to carry their burden to establish the validity of the Antenuptial Agreement. *See e.g., Reserve Life Ins. Co. v. Whittemore,* 442 S.W.2d 266, 275 (Tenn. Ct. App. 1969) (stating that where the evidence leaves to speculation a determinative fact in a lawsuit, the party having the burden of proving the fact must suffer the loss). We find that the Antenuptial Agreement between Tommie Baker and Clifford Franklin Baker signed on August 31, 1975 is invalid and unenforceable. **Whether the Trial Court erred in allowing irrelevant evidence to be presented at trial?**

As to the issue of whether the trial court erred in allowing irrelevant evidence to be presented at trial, our reversing the trial court's finding that the antenuptial agreement was valid renders this issue moot.

For the foregoing reasons, we reverse the order of the trial court. This case is remanded to the trial court for such further proceedings as may be necessary consistent with this Opinion. Costs of this appeal are assessed to the Appellees, Lee King and Baker King.

**W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.**