IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 6, 2017 Session

**JUDITH HUSK v. BRANDON THOMPSON**

**Appeal from the Circuit Court for Rutherford County**
**No. 70757      Howard W. Wilson, Judge**

———————————————

**No. M2016-01481-COA-R3-CV**

———————————————

The trial court granted a default judgment against the appellant for claims of conversion, unjust enrichment, and malicious prosecution. Immediately after granting the default judgment, the trial court awarded the appellee damages without hearing proof. The appellant filed a motion to set aside the default judgment. The trial court denied the appellant's motion. We affirm the trial court's decision in all regards except for its award of damages. The case is remanded for a hearing on damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated and Remanded in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Mitchell Edward Shannon, Murfreesboro, Tennessee, for the appellant, Brandon Thompson.

David Brent Whelan, Murfreesboro, Tennessee, for the appellee, Judith Husk.

**OPINION**

I. FACTUAL AND PROCEDURAL BACKGROUND

Judith Husk ("Ms. Husk") and Brandon Thompson ("Mr. Thompson") were involved in a romantic relationship that culminated in the parties' decision to cohabitate. In February 2015, the parties entered into a lease to share an apartment in Murfreesboro, Tennessee. The parties' relationship ended abruptly on September 9, 2015, when police arrested Ms. Husk and charged her with domestic assault against Mr. Thompson. Ms. Husk's bond contained a condition that prohibited contact between the parties. As a result of this bond condition, Ms. Husk could not return to the parties' apartment. Mr.

Thompson requested that the criminal court modify the bond condition to allow contact with Ms. Husk; however, Ms. Husk objected, so the no-contact condition remained in place.

On October 29, 2015, Ms. Husk entered an agreed order in the criminal court that also contained a no-contact condition. Nevertheless, the court granted Ms. Husk permission to have her father, Michael Husk ("Mr. Husk"), make arrangements with Mr. Thompson for Ms. Husk to retrieve her personal property from the parties' apartment. Mr. Husk retrieved some of Ms. Husk's belongings on November 9, 2015. When Mr. Husk returned the following week with Ms. Husk to retrieve her remaining personal property, Mr. Thompson was present at the apartment. Shortly thereafter, the police arrived at the apartment and arrested Mr. Husk for criminal trespass.[1] A few days later, the police arrested Ms. Husk on a warrant sworn against her by Mr. Thompson for criminal contempt based upon her violation of the no-contact condition.

Although the no-contact condition prohibited the parties from sharing the apartment, Mr. Thompson refused either to pay the full rental amount or to vacate the apartment so Ms. Husk could take occupancy and pay the full rental amount. Ms. Husk continued to pay her portion of the rent in September, October, and November 2015 despite the fact she could no longer reside at the apartment. When Mr. Thompson failed to pay his portion of the rent for December 2015 and January 2016, Ms. Husk paid the full rental amount. Both parties chose not to renew the lease, and Mr. Thompson placed all of Ms. Husk's remaining personal property in a storage unit.

On January 8, 2016, Ms. Husk filed a complaint against Mr. Thompson alleging conversion, unjust enrichment, and malicious prosecution. After the Rutherford County Sheriff's Office notified Mr. Thompson of the lawsuit, he went to the sheriff's office on January 13, 2016, where he was served with the summons and complaint. Mr. Thompson failed to file an answer to the complaint within thirty days of service. Consequently, Ms. Husk filed a motion for default judgment on February 23, 2016 (forty days after service of the summons and complaint).

The trial court heard Ms. Husk's motion on March 15, 2016. Because Mr. Thompson failed to appear at the hearing on the motion and to answer the complaint within thirty days of service, the trial court entered an order granting Ms. Husk a default judgment and awarding her damages in the amount of $15,577.16. After receiving the trial court's order via mail, Mr. Thompson filed a motion to set aside the default

---

[1] The parties dispute who called the police. Mr. Thompson asserts that apartment security called the police after Mr. Husk became angry. Ms. Husk avers that Mr. Thompson told her father they could retrieve Ms. Husk's remaining personal property on that date because he would not be present at the apartment; however, when Ms. Husk and her father arrived at the apartment, Mr. Thompson was present and called the police.

judgment as well as an answer to the complaint. On June 15, 2016, the trial court denied Mr. Thompson's motion to set aside the default judgment. Mr. Thompson appeals.

## II. ANALYSIS

### A. Motion to Set Aside Default Judgment

Mr. Thompson argues that the trial court abused its discretion in refusing to set aside the default judgment. Tennessee Rule of Civil Procedure 55.02 provides that, "[f]or good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." Pursuant to Rule 60.02, a court "may relieve a party or the party's legal representative from a final judgment, order or proceeding" based on several grounds. The ground for relief relevant to this appeal is that of "mistake, inadvertence, surprise or excusable neglect." TENN. R. CIV. P. 60.02(1). A moving party seeking relief pursuant to this ground bears the burden of establishing "'facts explaining why the movant was justified in failing to avoid the mistake, inadvertence, surprise or neglect.'" *Tenn. Dep't of Human Servs. v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985) (quoting *Tenn. State Bank v. Lay*, 609 S.W.2d 525, 527 (Tenn. Ct. App. 1980)).

Courts prefer to adjudicate cases on their merits rather than by entering default judgments. *Foster v. Dunn*, CA No. 2789, 1986 WL 5239, at *1 (Tenn. Ct. App. May 6, 1986). Thus, when applying Rule 60 to default judgments, courts liberally construe the rule to allow for relief from the judgment. *Barbee*, 689 S.W.2d at 867. In reviewing a trial court's decision under Rule 60, "we give great deference" to the trial court's decision to grant or deny relief from a default judgment. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003). We will, therefore, uphold the trial court's decision absent an abuse of discretion. *Id.* An abuse of discretion only occurs when a trial court "'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

When deciding whether to set aside a default judgment pursuant to Rule 60.02(1), courts consider the following three factors: "(1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) whether the non-defaulting party would be prejudiced if relief were granted." *Henry*, 104 S.W.3d at 481 (citing *Barbee*, 689 S.W.2d at 866).

We begin with the first factor pertaining to the willfulness of the default. Willful conduct includes "'deliberate choices'" and "'conduct that is flagrant and unexplained.'" *Discover Bank v. Morgan*, 363 S.W.3d 479, 493 (Tenn. 2012) (quoting *Barber & McMurry, Inc. v. Top-Flight Dev. Corp.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986), and *Hayes v. Hayes*, No. M2006-02356-COA-R3-CV, 2007 WL 2580026, at *2 (Tenn. Ct. App. Sept. 6, 2007)). Mr. Thompson admitted that he received the summons and

complaint in this matter but failed to respond within thirty days of service. At the hearing on the Rule 60 motion, Mr. Thompson asserted that he failed to file a timely response because he "believed no action would be taken in the civil case" until the criminal cases involving Ms. Husk were resolved. This assertion is equivalent to a claim of ignorance of the law.

In *McBride v. Webb*, No. M2006-01631-COA-R3-CV, 2007 WL 2790681, at *3 (Tenn. Ct. App. Sept. 25, 2007), a case similar in several respects to the present case, the trial court granted the plaintiff's motion for default judgment. *Id.* at *1. The defendant failed to file an answer to the complaint but admitted that she received the summons and complaint and recalled reading the summons. The defendant claimed that her failure to file a response was due to her inability to understand the language contained in the summons. *McBride*, 2007 WL 2790681, at *3. The *McBride* court stated that "[i]t is well established that ignorance of the law is not excusable neglect or a proper ground for relief under Tenn. R. Civ. P. 60.02." *Id.* As a result, the *McBride* court concluded that the defendant acted willfully when she chose not to file a response. *Id.* Furthermore, as the Tennessee Supreme Court expressed in *Food Lion, Inc. v. Washington County Beer Board*, 700 S.W.2d 893, 896 (Tenn. 1985), "[i]f this Court were to hold that ignorance of the law is a proper ground for relief under Rule 60.02, . . . it is hard to conceive how any judgment could be safe from assault on that ground." Thus, Mr. Thompson's asserted misunderstanding of the law does not constitute a proper ground for relief available under Rule 60.02. It is clear from this record that Mr. Thompson acted willfully when he chose not to file a response to the complaint. Because the default was willful, we need not address the remaining factors for setting aside a default judgment. *See McBride*, 2007 WL 2790681, at *3-4 (concluding that it was unnecessary to address the remaining criteria after determining that the default was willful).

Mr. Thompson asserts an additional argument for why he is entitled to relief from the default judgment based upon Rule 60.02(1). Specifically, Mr. Thompson argues that the default judgment should be set aside because he never received notice of the motion for default judgment. "Mistake, surprise or excusable neglect" may be established where a defaulting party receives "no actual notice of a critical date in a court proceeding." *Estate of Vanleer v. Harakas*, No. M2001-00687-COA-R3-CV, 2002 WL 32332191, at *6 (Tenn. Ct. App. Dec. 5, 2002). Because a default judgment disposes of a case as definitively as a trial on the merits, a hearing on a motion for default judgment constitutes a critical court proceeding. *Id.* at *7.

Ms. Husk's motion for default judgment includes a notice of hearing at the bottom of the two-page motion along with a certificate of service signed by her attorney stating that the motion was sent to Mr. Thompson at 2621 Birdsong Avenue, Murfreesboro, Tennessee.[2] If a document contains a certificate of service, "[t]he certificate is prima

---

[2] Mr. Thompson admitted that the Birdsong Avenue address was the correct address at which he could be

facie evidence that the document was served in the manner described in the certificate and raises a rebuttable presumption that it was received by the person to whom it was sent." *Orr v. Orr*, No. 01-A-01-9012-CH-00464, 1991 WL 226916, at *4 (Tenn. Ct. App. Nov. 6, 1991). This presumption may, however, be rebutted by proof that the document was not, in fact, received. *Harakas*, 2002 WL 32332191, at *8. At the hearing on the motion to set aside the default judgment, Mr. Thompson claimed he did not receive a copy of the motion for default judgment. Ms. Husk responded that it was reasonable to believe that Mr. Thompson had received the motion because he had received both the complaint and the judgment at the Birdsong Avenue address. The trial court's determination of this issue came down to credibility, and the trial court decided against Mr. Thompson. This Court places great weight on a trial court's credibility determinations. *In re Estate of Baker v. King*, 207 S.W.3d 254, 263 (Tenn. Ct. App. 2007). Moreover, we are bound by the trial court's determination unless "'there is found in the record clear, concrete, and convincing evidence to the contrary.'" *Rice v. Rice*, 983 S.W.2d 680, 682 (Tenn. Ct. App. 1998) (quoting *Tenn. Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974)).

The record shows that Mr. Thompson was, in fact, served the complaint at the sheriff's office rather than at the Birdsong Avenue address. The *McBride* court confronted a similar issue. As here, the defendant in *McBride* received service of the complaint and summons at the sheriff's office. *McBride*, 2007 WL 2790681, at *1. The defendant later claimed that she never received the plaintiff's motion for default judgment despite the motion containing a certificate of service with her correct address. *Id.* The *McBride* court did not determine whether the defendant rebutted the presumption discussed *supra*, but it noted that "[t]he fact that defendant received the Complaint and a copy of the Judgment casts doubt on her credibility that she did not receive the other three mailings." *Id.* at *3 n.1. Applying this same reasoning, we find that, although the sheriff's department actually served Mr. Thompson with the summons and complaint at the sheriff's office rather than the Birdsong Avenue address, the fact that he received both the complaint and a copy of the default judgment calls into question the veracity of his claim that he did not receive the motion for default judgment.

An examination of the record shows that the certificate of service included with the motion for default judgment does not provide a date indicating when the motion was sent. Mr. Thompson emphasizes the lack of a mailing date as support for his claim that he did not receive the motion. The omission of a date, however, is not proof that he did not receive the motion; it merely shows that it is unclear what day the motion was mailed. *See Johnson v. Jones*, No. M2007-02876-COA-R3-CV, 2009 WL 902143, at *2 (Tenn. Ct. App. Apr. 2, 2009) (stating that the certificate of service on an order of voluntary dismissal certified that a copy was mailed to the defendants' counsel despite the omission

---

served with process. Furthermore, Mr. Thompson received a copy of the default judgment at this address.

of a mailing date). Accordingly, we find no evidence compelling a contrary conclusion to that reached by the trial court.

In light of Mr. Thompson's deliberate decision not to file a response to the complaint and his failure to rebut the presumption that he received Ms. Husk's motion for default judgment, we conclude that the trial court did not abuse its discretion in refusing to set aside the default judgment.

B. Damages

Mr. Thompson contends that the trial court erred in immediately awarding Ms. Husk damages after granting the default judgment. Generally, the rule in Tennessee "is that the defendant, by suffering a default judgment to be entered against him, impliedly confesses all of the material allegations of fact contained in his complaint, except the amount of the plaintiff's unliquidated damages." *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 101 (Tenn. 1984) (citing *Adkisson v. Huffman*, 469 S.W.2d 368, 377 (Tenn. 1971)). Thus, a default judgment establishes the non-defaulting party's right to maintain the action and recover some damages, but the amount of damages remains an open question to be determined by proof. *Sherick v. Jones*, No. 87-351-II, 1988 WL 55028, at *6 (Tenn. Ct. App. June 3, 1988) (quoting *Turner v. Carter*, 38 Tenn. 520, 525 (1858)). If the amount of the plaintiff's damages is liquidated, however, a trial court may immediately enter a final judgment without a determination by proof. *Id.* at *7 (quoting *Grace v. Curley*, 3 Tenn. App. 1, 3-4 (1926)).

The trial court heard the motion for default judgment on March 15, 2016. After hearing the motion, the trial court immediately entered an order granting Ms. Husk's motion that states, in pertinent part:

> [Mr. Thompson], having been properly served, having failed to appear at this hearing, and having failed to answer within the time proscribed by Statute, [Ms. Husk] moves this Court for a ruling against [Mr. Thompson] for $13,827.16 . . . . Additionally, assess [Ms. Husk's] attorney's fees against [Mr. Thompson], in the amount of $1,750.00 . . . for a total Judgment in the amount of $15,577.16 . . . .
>
> **IT IS ORDERED, ADJUDGED, AND DECREED,** the Plaintiff, Judith Husk, is awarded a Judgment in the amount of $15,577.16 . . . against Defendant Brandon Thompson.

This order resolved all claims and left nothing to be determined by the trial court; therefore, it constituted a final judgment. *See Ball v. McDowell*, 288 S.W.3d 833, 836-37 (Tenn. 2009) (stating that a final judgment "is one that resolves all of the parties' claims and leaves the court with nothing to adjudicate"). Thus, the question becomes whether

the damages involved are unliquidated, requiring a determination by proof before the trial court could properly enter a final judgment.

Unliquidated damages are "[d]amages that cannot be determined by a fixed formula and must be established by a judge or jury." BLACK'S LAW DICTIONARY (10th ed. 2014). In contrast, liquidated damages are defined, in pertinent part, as follows:

[A] set amount of money, or a certain formula, expressly stipulated in a contract as the amount of damages to be paid by a party that breaches the agreement. Liquidated damages can also be defined as the amount which has been ascertained by judgment or by specific agreement of the parties or which are susceptible of being made certain by mathematical calculation from known factors. . . .

Damages are "liquidated" when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation, or by application of definite rules of law.

22 AM. JUR. 2D *Damages* § 504 (2017) (footnotes omitted).

In the instant case, an examination of Ms. Husk's complaint shows that she requested compensatory damages for conversion, unjust enrichment, and malicious prosecution. Concerning her claim for conversion, the complaint avers: "[Mr. Thompson's] interference has caused damages to [Ms. Husk] in excess of six thousand dollars ($6,000.00)." In regard to her claim for unjust enrichment, the complaint states, in pertinent part:

26. [Ms. Husk], although not able to use and enjoy the bargained for apartment, continued to pay her ½ of the rental amount for the months of September, October, and November, which totaled one thousand ninety-two dollars ($1092.00).

27. During the month of December and January 1st – 26th (the end of the lease period, [Ms. Husk] timely paid her half but was forced to pay the entire rental amount as [Mr. Thompson] did not pay, which would cause a default and harm to [Ms. Husk]. The full month rental amount for December 2015 was seven hundred and twenty-eight dollars, ($728.00) with an additional seventy dollar ($70.00) late fee for December, and a prorated rental amount for January 2016 of six hundred ten dollars and fifty-eight cents ($610.58) for a total for December and January of one thousand four hundred eight dollars and fifty-eight cents ($1408.58).

Finally, the malicious prosecution section of the complaint avers: "[Ms. Husk] suffered financial damages and emotional harm as a result of [Mr. Thompson's] actions in an amount to be determined at trial but no less than Five Thousand dollars ($5,000.00)."

After conducting a thorough examination of the complaint, it is clear that the damages claimed for the conversion and malicious prosecution claims are for an uncertain amount and are incapable of being ascertained by a fixed formula. Therefore, the damages sought for those claims are unliquidated. As such, the trial court should have required Ms. Husk to prove the extent of her claimed damages and allowed Mr. Thompson an opportunity to rebut her evidence or present evidence of his own on the question of damages for those claims before entering a final judgment.

The damages claimed for the unjust enrichment claim are not as easily identified as either unliquidated or liquidated. At first glance, the damages appear to qualify as liquidated because they seem ascertainable by a mathematical calculation from the known facts. For example, the complaint states that Mr. Thompson received the benefit of Ms. Husk paying $1,092 towards the rental amount for September, October, and November 2015. The complaint further states that he received the benefit of Ms. Husk paying the entire rental amount for December 2015 and January 2016, which totaled $1,408.58. Initially, it appears that these amounts can be combined to equal $2,500.58 in total benefits received by Mr. Thompson. Upon closer examination of the complaint, however, it becomes apparent that there are unknown facts that prevent an exact determination of the damages. The complaint contains no information regarding the parties' agreement on paying rent when they entered into the lease. As a result, a question exists as to what percentage of the rent each party was responsible for paying. Thus, the amount of the benefit received by Mr. Thompson remains uncertain and constitutes unliquidated damages. Ms. Husk must prove the extent of her unjust enrichment damages.

We conclude, therefore, that the trial court erred in immediately entering a final judgment on damages before considering any proof of the unliquidated damages claimed for all three claims.

## III. CONCLUSION

We affirm the trial court's decision denying Mr. Thompson's motion to set aside the default judgment and vacate the award of damages. The case is remanded for a hearing on damages. Costs of this appeal are assessed half to the appellant and half to the appellee, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE