## FRANCES SMITH v. DR. LOUIS BOYD.

Western Section. July 3, 1925.

Certiorari denied by Supreme Court March 13, 1926.

1. **Accord and satisfaction.** Where plaintiff seeks to repudiate a settlement for personal injuries because of fraud, money received must be tendered back.

Where a party seeks to repudiate a settlement or adjustment of a claim for personal injuries on the ground that it was secured through fraud, as a condition precedent he must tender back the money received in the settlement.

2. **Accord and satisfaction. Tender may be made at any time during trial.**
In an action to repudiate settlement for personal injuries the money received in the settlement may be tendered back with the filing of the replication or at any time during the progress of the trial.

3. **Accord and satisfaction. Evidence held to show defendant never received money under settlement.**
In an action to recover damages for personal injuries where evidence showed automobile in which plaintiff was riding belonged to her sister and that insurance agents agreed to settle with sister for $200 and went to the home of plaintiff, a negro, at 12:10 in the night and got her to sign a release for the sum of $75, and made her endorse the draft and then turned it over to the sister as a part of the $200 due her, held plaintiff did not actually receive any money and was not compelled to tender anything to maintain her action.

Appeal in error from Circuit Court, Shelby County; Hon. H. W. Laughlin, Judge.

Reversed and remanded.

Harsh & Harsh, of Memphis, for plaintiff in error.

Wilson, Gates & Armstrong, of Memphis, for defendant in error.

SENTER, J. This is a suit by Frances Smith, a negro woman, against Dr. Louis Boyd, to recover damages for personal injuries alleged to have been sustained in an automobile accident. The parties will be referred to in this opinion in accordance with their original status as Frances Smith, plaintiff, against Dr. Louis Boyd, defendant.

To the declaration and amended declaration, the defendant filed two pleas, as follows:

### I.

"That heretofore to-wit, on the 29th day of December, 1924, the plaintiff by a certain written instrument here to the court shown, acknowledged satisfaction in full of the injuries set forth in the declaration and released and discharged defendant from any further liability thereon.

### II.

"For further plea in this cause, the defendant says that before the commencement of this action, he paid the plaintiff the sum of seventy-five dollars ($75) which was accepted by her in full settlement of all damages sustained from the injuries alleged in the declaration."

To these pleas the plaintiff filed a replication, admitting that plaintiff signed the paper, but denied that the contents of which were known to her at the time she signed the same, and then proceeds to set out the circumstances under which she was induced to sign the paper, and alleged in said replication that her signature was obtained by fraud and misrepresentation and that she did not

receive anything from the defendant in settlement of any claim that she had against the defendant.

On Saturday, December 21, 1924, plaintiff was riding on the back seat of an automobile which was being driven by her brother-in-law, Andrew Blackwell. The automobile belonged to the sister of plaintiff, Dora Blackwell, wife of Andrew Blackwell. The automobile in which they were riding was struck by the automobile of the defendant at a street crossing in the city of Memphis, which was then being driven by the defendant, resulting in demolishing the Ford touring car in which plaintiff was riding, and in which accident the plaintiff as well as the other occupants of the car suffered certain personal injuries.

It appears that after the accident the defendant, who is a physician in the City of Memphis, admitted the responsibility for the collision of the cars, and suggested that Andrew Blackwell call at his office the next day, Sunday, at 11 o'clock, and adjustment would be made. Andrew Blackwell, at the invitation of the defendant, called at defendant's office on the next day about 11:00 o'clock and was then told by the defendant that he carried insurance against such accidents and that the agents of the Insurance Company were in the building on the next floor, and they repaired to the office of the insurance agents, where the matter of the accident and the liability of defendant for the accident was discussed. The two agents of the Insurance Company went with Andrew Blackwell to his home and discussed the matter of a settlement with Andrew Blackwell and his wife, Dora Blackwell, and reached an agreement whereby a second-hand car would be purchased and given to Dora Blackwell in place of the demolished car.

The approximate cost of repairing the demolished car was discussed at that time, and it was suggested by the agents of the insurance company that another second-hand car could be bought for the cost of repairing the demolished car. Andrew Blackwell accompanied these two agents to investigate from a dealer in used automobiles the cost of procuring a used automobile, and finally selected a used car at the price of $200. The purchase of this used car and the final settlement was postponed until the next day, Monday, for the alleged reason that the transaction could not be legally closed on Sunday.

A few minutes after midnight at about 12:05 or 12:10 A. M., Monday morning, these two agents of defendant again called at the home of Andrew Blackwell, where plaintiff was then living with her sister and brother-in-law, for the purpose of closing the settlement. The undisputed evidence is to the effect that these negroes had all retired and were awakened from their sleep by these two agents calling a little after midnight, and when the agents were admitted into the house the plaintiff was in bed. She was sick and suffering

from her injuries, and then had fever and was in considerable pain. These agents of the defendant produced releases previously pre-pared, and which they had prepared before they went to the house, also three checks or drafts, one of the checks or drafts was made payable to Frances Smith for $75, and one to Dora Blackwell for $75, and one to Andrew Blackwell for $50, the three aggregating $200, the amount agreed to be paid for the used car to be pur-chased by Dora Blackwell in lieu of the demolished car. One of these releases, at least, was read aloud by one of the agents of defendant to these negroes. Plaintiff Frances Smith was requested to sign the release, and also the check. She asked these agents why she should sign the documents as the car did not belong to her but belonged to her sister, Dora. The agent in reply said that she was in the car at the time of the accident and should sign the paper.. Up to this time the plaintiff Frances Smith had not entered into the negotiations of settlement nor had she been consulted about a pro-posed settlement for the wrecked automobile.

It appears from the evidence that before either of these negroes signed the respective releases and drafts, Dora inquired of the agents as to who was going to pay for their personal injuries sustained in the accident, and especially called attention to the injuries of Frances Smith, her sister, who seemed to have been more seriously injured, and that these agents of defendant replied that Dr. Boyd would take care of that; that he was a reliable man and a good man and would settle for the personal injuries, and that if he did not, that they, meaning the Insurance Company, would settle for their personal injuries.

At the trial of the case the defendant did not introduce any proof, but rested the case on the evidence offered by plaintiff.

At the conclusion of plaintiff's evidence, the court granted the motion of the defendant for a peremptory instruction to the jury to return a verdict in favor of the defendant, and the jury accord-ingly returned a verdict in favor of the defendant, and judgment was rendered by the court in favor of the defendant.

A motion for a new trial by plaintiff was overruled and to which action of the court plaintiff excepted and has appealed to this court, assigning errors.

At the conclusion of the evidence, and in passing upon the motion of defendant for a directed verdict in favor of defendant, the at-torney for defendant in his oral motion stated to the court :.

"MR. ARMSTRONG: Here is the point. Even for the purpose of this motion and argument, assuming that the settlement was fraudulently induced, setting that aside, the plaintiff could not re-cover in this case without making back a tender of the money re-

ceived by her, and she has refused to do it and she cannot recover for that reason. That is our motion.''

After argument the court orally disposed of the motion in part as follows:

''The motion is based upon the proposition that as a condition prerequisite to her maintaining this suit, that the money paid her must be paid back. Now, conceding that you have got a case of fraud, and you haven't paid the money back, under these authorities you can't get along. Now the accord and satisfaction that you plead here—they plead a release in this case, for a certain amount of money. The execution by the defendant of a draft for that amount of money incorporated in the release, and an endorsement of the draft by the plaintiff and a payment by the bank upon her endorsement—those are the facts in this case.

''Now it is conceded that she executed the release. It is conceded that the draft was given to her. It is conceded that she endorsed the draft, and it is conceded that the bank paid the draft. Now, when those facts appear, then this law comes in immediately: 'A return or tender of the consideration received under a contract is a condition precedent to exercising the right to attack it; therefore, in an action for personal injuries, where the defense is accord and satisfaction, based upon a release executed by the plaintiff, in consideration of money paid him, which plaintiff seeks to repudiate for fraud in its procurement, he must pay into court or tender, the amount paid him with his replication and a replication filed without such payment, or tender, does not entitle him to disaffirm the settlement and is insufficient in law.' The motion is sustained.''

The action of the court in overruling the motion for a new trial, and in holding that the plaintiff would be required to tender back the amount of the draft or check given to her, with her replication to the plea as a condition precedent to her repudiation of the settlement, where the alleged settlement was procured by fraud, is made the basis of the assignments of error, and presents the question to be disposed of by this court.

It is the settled rule that where the plaintiff seeks to repudiate a settlement or adjustment of a claim for personal injuries, that a tender of the amount received in the alleged settlement must first be made. It is also the settled rule that in an action for personal injuries where the special plea of accord and satisfaction is interposed by the defendant, and a written release from further liability has been signed by the plaintiff; and the plaintiff by way of replication admits the signing of the release and the payment of money by defendant, but claims that the signature to the release, and the alleged adjustment was procured by fraud and misrepresentation, the plaintiff must offer to pay back or tender the amount received with the replication to the plea, as a condition precedent to her

right to repudiate the accord and satisfaction, or her action in signing the release. Memphis Street Railway Co. v· Giardino, 116 Tenn., 368.

If the tender is not made with the filing of the replication, it may be made at any time during the progress of the trial. 83 Ga., 558; 10 S. E. Rep., 350.

This rule does not go to the extent that the amount received may be credited against the recovery without tendering the money back during the trial. Lane v. Dayton, 108 Tenn., 581.

In the present case the plaintiff did not tender the $75 back with her replication; nor did she tender it back at any time during the trial of the case. If it appeared from this record that the plaintiff actually received the $75 alleged to have been paid to her by the defendant and understood that the payment was being made to her, or whether she so understood it or not, her failure to pay the money back, or to tender it back with the filing of her replication to the plea of accord and satisfaction, or to tender it back at some time during the trial of the case, would preclude her from maintaining her suit.

The plaintiff denies that she ever received the $75, or that $75 or any other amount was ever paid to her at the time she signed the release, or at any other time.

We think it clear from the evidence that these agents of the defendant deliberately planned to procure an adjustment and settlement with these negroes, and went to the home of these negroes at the unusual hour of five minutes after twelve o'clock at night and aroused them from their sleep in order to hurry through this settlement and to take advantage of the situation at that time. While it is true one of these checks or drafts was made payable to the plaintiff, Frances Smith, for $75, and one was made payable to Andrew Blackwell for $50, and one to Dora Blackwell, for $75, the three checks aggregated the amount agreed to be paid in the purchasing of another car to take the place of the demolished car. It was known to the agents that the plaintiff did not have any interest in the demolished automobile; that the demolished automobile belonged to her sister, Dora. It was a plan whereby the plaintiff was contributing $75 toward the purchase of the automobile, and at the same time releasing and waiving any claim for damages for the personal injuries she sustained in the accident.

The uncontroverted evidence shows that when she was requested to sign this release she stated to the agents that the car did not belong to her and asked them why she was required to sign it, and she was told by the agents that it was because she was in the car at the time of the accident. Her sister then asked the agents who was going to pay her sister for the personal injuries she had sustained in the accident and then called the agent's attention to the serious

injuries sustained by the plaintiff, and these agents replied that Dr. Boyd would settle with her for her injuries; that he was a responsible man and a good man, but that if he did not settle for her personal injuries that they would.

Under these representations the plaintiff signed the release offered in evidence and upon which the defendant relies in support of its plea of accord and satisfaction. The plaintiff signed all the documents that she signed at all that night and in the presence of these agents. She admits that she endorsed the draft or check for $75 payable to her, but it is shown by the evidence that at the time she signed the papers she did it at the instance and by the direction of these agents, and that they then handed it to her sister, Dora, as they did also the $50 check payable to Andrew Blackwell, the husband of Dora, and told Dora that she could go to the bank the next morning and cash the checks or drafts by endorsing them, and use the money in paying for the used automobile that was to be purchased to take the place of the wrecked car.

Under these facts reasonably and fairly apparent from the record we do not think that the plaintiff received the $75 in the alleged settlement, nor do we think it was intended by these agents of defendant that the plaintiff Frances Smith was actually receiving anything, but they intended that she would turn the check over to her sister, Dora, as a part of the settlement for the demolished car.

If it be conceded, as it was conceded for the purpose of the motion for a directed verdict, that the agents procured the signing of this release from the plaintiff, Frances Smith, by the employment of fraud, misrepresentation and deceit, it could as well be conceded, and with the same consistency, that they procured her to endorse the draft and then to hand it back to them and they in turn hand it to Dora Blackwell, as a part of the $200 to be paid to Dora Blackwell for the damage to the automobile. If there was fraud in procuring the signing of the release by plaintiff there was equal fraud in procuring her to endorse the check. In this view of the case there was no material evidence that plaintiff Frances Smith received the $75, and she not having received the $75 or any part of the same, and there not having been any amount actually paid to her, or really intended for her, she should not have been required to repay the $75 or to tender it into court as a condition precedent to maintaining her suit.

Attorneys for defendant in error in their excellent brief, have cited numerous cases and authorities in support of the holding of the trial judge, and in support of their contention that the trial judge was not in error in holding that a repayment or a tender of the $75 by plaintiff was a condition precedent and necessary to the maintenance of her suit. An examination of all the cases and

authorities cited discloses that they are cases in which it appeared that the plaintiff had actually received the money and had failed to tender it back with their replications to the plea of accord and satisfaction, or at some time during the trial of the case.

The present case is distinguished from the cases cited, in that we find from a careful consideration of all the evidence in the case that the plaintiff did not actually receive the $75, or any other sum, and that the $75 draft payable to her was in effect paid to Dora Blackwell, or intended to be applied to the purchase of another car by Dora Blackwell, and that this was the intention of the agents of defendant at the time they had her to endorse the draft and then hand it over to her sister, Dora Blackwell.

It results that the assignments of error are sustained, and the judgment of the lower court is reversed and the case remanded for a new trial.

The cost of this appeal will be paid by defendant in error, and for which execution may issue.

Heiskell and Owen, JJ., concur.