# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs August 4, 2006 Session

## PAULETTE DOBBINS

v.

## JEFFERY F. DABBS, JR., JEANETTE DABBS, JEFFERY F. DABBS, SR., AND ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION

An Appeal from the Chancery Court for Henderson County
No. 17126      James F. Butler, Chancellor

---

No. W2006-00322-COA-R3-CV - Filed January 25, 2007

---

This case involves accord and satisfaction. The defendants fraudulently transferred real property owned by the plaintiff. The plaintiff filed this lawsuit against the defendants for damages related to the fraudulent transfer. The parties later agreed to settle the matter for approximately $6,000. The defendants initially paid the plaintiff $3,000 pursuant to the settlement agreement. Before the remainder was paid, the plaintiff repudiated the agreement in writing. Later, the defendants sent the plaintiff a check for the remainder of the settlement. The plaintiff kept the second payment, but told the defendants that she did not consider the payment to satisfy the debt and stated her intent to set the case for trial. At the subsequent trial, the defendants did not appear. A judgment was entered in favor of the plaintiff for $58,000. The defendants filed a motion to set aside the judgment as well as a motion to dismiss the case, based on the original settlement agreement. The trial court granted the defendants' motions and dismissed the case on that basis. The plaintiff now appeals. We affirm, concluding that the parties' settlement agreement was an executory accord which was not effectively repudiated and was properly enforced under the circumstances.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Radford H. Dimmick, Nashville, Tennessee, for the appellant, Paulette Dobbins.

Lloyd R. Tatum, Henderson, Tennessee, for the appellees, Jeffery Dabbs, Jr., and Jeanette Dabbs.

**OPINION**

In May 1996, the parents of Plaintiff/Appellant Paulette Dobbins ("Dobbins") conveyed to Dobbins their interest in real property at 327 Vine Street in Lexington, Tennessee.[1]  Defendant Jeffrey Dabbs, Sr., is Dobbins' brother.  Allegedly, in October 2002, Jeffrey Dabbs, Sr., his wife, Defendant/Appellee Jeanette Dabbs, and his son, Defendant/Appellee Jeffrey Dabbs, Jr., acted in concert to fraudulently convey the Vine Street property to Jeffrey Dabbs, Jr., in order to obtain funds to help Jeffrey Dabbs, Sr., pay legal expenses.

On May 15, 2003, Dobbins filed the instant lawsuit against Jeffrey F. Dabbs, Sr., Jeffrey E. Dabbs, Jr., and Jeanette Dabbs, alleging conversion of the Vine Street property.[2]  Dobbins asserted that the three defendants procured a fraudulent signature purporting to be Dobbins' on a quitclaim deed that transferred the Vine Street property to Jeffrey Dabbs, Jr.  The complaint stated that the property was then used by Jeffrey Dabbs, Jr., to secure a mortgage in the amount of $24,000.  When the borrowers defaulted and the lender foreclosed on the property, Dobbins learned of the fraud.  In the resulting lawsuit for conversion, Dobbins sought both compensatory and punitive damages.

None of the three defendants filed an answer to the complaint within the appropriate time limitations.  On September 10, 2003, the trial court entered a default judgment against all three defendants, reserving the issue of damages for a later hearing.  On January 28, 2004, defendants Jeffery F. Dabbs, Jr., and Jeanette Dabbs  (collectively, "defendants") filed a belated answer to the complaint.  On January 29, 2004, the defendants filed a motion to set aside the default judgment.[3]  The record does not indicate whether the motion to set aside was ever adjudicated.

On June 2, 2004, Dobbins' attorney faxed to counsel for the defendants an offer of compromise and settlement in the case.  The letter said that Dobbins was prepared to waive all claims and dismiss the case if the defendants would agree to pay her attorney's fees, "which currently amount to $5925.14."  The letter did not state a time frame for payment of the money.  On June 14, 2004, counsel for the defendants accepted the offer, responding that the defendants would pay the requested amount in exchange for a dismissal with prejudice of Dobbins' complaint.[4]  The acceptance letter stated that the defendants would "need, however, until June 30[, 2004] to have this money . . . ."

---

[1]Dobbins' parents retained a life estate in the property.  Apparently, Dobbins' mother was still alive during the transaction in question.

[2]Dobbins also named as a defendant Accredited Home Lenders, Inc., a California Corporation, but that defendant was voluntarily dismissed from the lawsuit.

[3]Jeffrey F. Dabbs, Sr., did not join in either the answer or the motion to set aside the default judgment.  Therefore, the judgment as to him is not at issue in this appeal.

[4]Counsel appeared to respond only on behalf of Jeanette Dabbs.  The parties, however, treat the settlement offer and acceptance as if it applies to both Jeffrey F. Dabbs, Jr., and Jeanette Dabbs.  For purposes of this opinion, we will assume that the settlement agreement applies to both defendants.

As of June 30, 2004, the defendants had not sent any of the settlement funds to Dobbins. Counsel for the parties apparently exchanged telephone calls, and on July 14, 2004, the defendants' attorney sent Dobbins a check for $3,000. The letter of enclosure stated that the check was the first "partial payment of our agreement to settle your client's claim for the total sum of $5,925.14." In the letter, the defendants' attorney said that he would be leaving for vacation on July 29, 2004, but that he expected to receive the next payment from the defendants for Dobbins before that time. The letter further stated that, "[i]f any of the above is not agreeable, then please return the check and give me a call." Dobbins accepted the check.

By the end of July, Dobbins had not received a second payment. On August 3, 2004, counsel for Dobbins sent the defendants a letter informing them that Dobbins was repudiating the settlement agreement, asserting that the defendants had failed to pay in a timely manner. The letter referred to a July 2, 2004 telephone call between the parties' counsel in which the defendants' attorney purportedly said that the defendants "would be able to pay one-half of the sums due on July 15, 2004, and the balance by the end of the month." Dobbins' attorney noted that Dobbins had received and accepted the first payment of $3,000, but had received no other payment. The letter then indicated Dobbins' opinion that the defendants had "now reneged on what was a more than reasonable settlement agreement," and that, consequently, Dobbins "deemed [the agreement] to be dissolved." Dobbins' attorney expressed his intent to "necessarily move forward with this case." The $3,000 that had already been paid as part of the settlement was not tendered back to the defendants.

Despite Dobbins' stated intent to repudiate, on August 23, 2004, counsel for the defendants sent Dobbins a check for $2,925.14 as the final payment in accordance with the parties' original agreement. The letter of enclosure stated:

> [The check is] in final payment of our agreement to settle your client's claim for the total sum or $5,925.14 plus court costs . . . . I will forward a dismissal with prejudice as to your client's claims if you tell me that Ms. Dobbins has decided to take this in final settlement. Hopefully, while I understand her frustration, she will decide that a bird in the hand is worth two in the bush and we can wrap this up.

Thus, the defendants' attorney specified that the check was the final payment pursuant to the settlement agreement. On October 6, 2004, Dobbins' counsel sent a letter in response, stating that Dobbins intended to keep the money tendered, but did not consider the payment as satisfying the debt. The letter stated:

> . . . While I do appreciate the funds received to date, the settlement agreement was, as you know, dissolved before the final payment was made. My client will dismiss this action upon the additional payment of $2025.00 to her. If this payment is not received in full at my office . . . by November 5, 2004, this offer shall be withdrawn and we shall proceed accordingly. . . . I enclose an order setting this case for trial.

Thus, in order to release her claim against the defendants, Dobbins requested an additional $2,025 for the fees and costs incurred as a result of the defendants' delays in payment.

Meanwhile, on August 4, 2004, just after she repudiated the settlement agreement, Dobbins filed a motion to set the case for trial and for a scheduling order. On November 10, 2004, the trial court set the matter for trial on March 3, 2005.

The trial commenced as scheduled on March 3, 2005. A transcript of the trial is not in the record on appeal. The defendants did not appear at trial. On March 14, 2005, the trial court entered an judgment in favor of Dobbins against all three defendants in the amount of $58,024.90.

On March 28, 2005, the defendants filed a motion to set aside the judgment and for a new trial pursuant to Rules 59 and 60 of the Tennessee Rules of Civil Procedure. In the motion, the defendants claimed that they were either not apprised of the trial date or, through excusable neglect, the date was not placed on counsel's office calendar due to a computer malfunction. The defendants argued that the trial court erred in proceeding with the trial when a motion to withdraw had been filed by the defendants' counsel on February 17, 2005, but had not yet been decided. Finally, the defendants asserted the defense of accord and satisfaction. The accord and satisfaction defense was further explained in a motion to enforce the settlement agreement filed contemporaneously with the motion to alter or amend. The motion to enforce the settlement agreement asserted that the parties had reached an agreement, that Dobbins had accepted full payment under the agreement, and that Dobbins could not repudiate the agreement without tendering back payment. Attached to the motion were copies of the communications between counsel regarding the proposed settlement and payments from the defendants.

On June 30, 2005, the trial court held a hearing on the defendants' motions. The record on appeal does not include a transcript of the hearing. On July 6, 2005, the trial court sent a letter to counsel for the parties stating the trial court's intent to grant the defendants' motion to set aside the final order as well as the defendants' motion to enforce the settlement agreement based on accord and satisfaction. The trial court reasoned:

> . . . Defendants did not act with diligence and responsibility in pursuing the settlement and complying with the terms, however, there were no time limits set forth in any of the agreements pertaining to the settlement. . . . Although Mr. Tatum filed a Motion to Withdraw, that Motion was never heard or allowed, or even set for hearing. The Plaintiffs in fact, took the money for the settlement, both payments, although they were not paid within the time frame of promise. Plaintiff did not pay or tender back the funds after it repudiated the agreement. In fact, after repudiation, Plaintiff accepted the balance of the funds for the payment of the original agreement, which had been offered and accepted.
> The Court finds that the agreement was an offer and an acceptance. That the agreement was in fact complied with within a reasonable period of time under the circumstances, and that there was no drop-dead deadline for the agreement to be completed. Even if there were a deadline, and it were not complied with, by

accepting the funds thereafter to complete the payment of the agreed amount, the Plaintiff's [sic] are now bound by the agreement and the payment thereof constitutes accord and satisfaction.

On August 4, 2005, the trial court entered an order incorporating the findings in its July 2005 letter, enforcing the settlement agreement as an accord and satisfaction, and dismissing the case. On September 1, 2005, Dobbins filed a motion to alter or amend the judgment. The trial court denied that motion.[5] From that order, Dobbins now appeals.

On appeal, Dobbins contends that the trial court erred in granting the defendants' motion to enforce the settlement agreement, arguing that the correspondence between the parties shows that there was no accord and satisfaction in this case. She claims that, by the time the second payment was made by the defendants, the settlement agreement had already been terminated by the August 3, 2004 letter from Dobbins' counsel. Because the second payment was not accepted in satisfaction of the settlement agreement, she maintains, there can be no accord and satisfaction, and the case should not have been dismissed. Furthermore, Dobbins argues, the trial court erred in granting the motion because the defense of accord and satisfaction is an affirmative defense that must be specifically pled. She asserts that the defense was waived because the defendants did not raise the issue until after a judgment had been entered against them.

We review the trial court's findings of fact *de novo*, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Issues of law are reviewed *de novo*, with no such presumption of correctness. ***LDI Design, LLC v. Dukes***, No. M2003-02905-COA-R3-CV, 2005 WL 3555543, at \*2 (Tenn. Ct. App. Dec. 28, 2005). "Although accord and satisfaction is governed by the law of contracts, whether there has been an accord and satisfaction is a question of fact." ***Id.*** at \*3 (citations omitted).

We first address Dobbins' argument that the defendants have waived the defense of accord and satisfaction, because the defense was not timely pled. Dobbins argues that the trial court erred in permitting the defendants to raise the affirmative defense of accord and satisfaction in a motion that was filed post-trial and post-judgment. She argues that the defendants had time between the day the agreement was allegedly consummated in August 2004 to the time of trial in March 2005 to amend their answer. Because they did not, Dobbins argues, the defense was waived. In response, the defendants note that the defense could not have been raised in their answer, because the answer was filed in January 2004, well before the settlement agreement occurred. By timely filing their motion to set aside the judgment and their motion to enforce the settlement agreement, the defendants contend, they cured any defects in their pleadings.

---

[5]The trial court filed two identical orders denying Dobbins' motion to alter or amend, dated January 5 and January 12, 2005.

The defense of accord and satisfaction is among the enumerated affirmative defenses in Rule 8.03 which must be timely raised. *See* Tenn. R. Civ. P. 8.03.[6] A "party waives all defenses and objections which the party does not present either by motion . . . or . . . in the party's answer or reply." Tenn. R. Civ. P. 12.08. "Recognizing the mandatory nature of Tenn. R. Civ. P. 8.03, the courts have consistently held that affirmative defenses that are not properly raised are waived." *Estate of Baker v. King*, No. W2005-00847-COA-R3-CV, 2006 WL 1173130, at *9 (Tenn. Ct. App. May 4, 2006); *see Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001) ("The failure to assert a claim or defense in a timely manner is deemed a waiver of the right to rely on the claim or defense later in the proceeding."). The question then becomes whether the defense of accord and satisfaction was raised in a timely and proper manner in this case.

Dobbins correctly points out that, in this case, the defendants had a period of several months in which the defense of accord and satisfaction could have been raised. In her October 2004 letter, Dobbins' counsel informed the defendants of her intent to set the matter for trial. Nevertheless, the defendants did not seek to amend their answer. In February 2005, counsel for the defendants filed a motion to withdraw from the case, which was never set for a hearing. The trial was held in March 2005, but the defendants failed to appear and a judgment was taken against them. After having been informed of the judgment taken against them, the defendants filed a motion to set aside the judgment based on excusable neglect and the likelihood of a meritorious defense, and, for the first time, raised the defense of accord and satisfaction in their motion to enforce the settlement agreement.

We first note that, because the parties' settlement agreement was not negotiated until after the defendants' answer was filed in January 2004, the defendants could not have included the defense of accord and satisfaction in their answer. Accordingly, we consider whether, under the circumstances, the defendants should have been precluded from raising the issue in their post-judgment motions. On appeal, Dobbins does not challenge the trial court's decision to set aside the final order. Rather, she appeals only the trial court's grant of the motion to enforce the settlement agreement. Therefore, there is no issue on appeal regarding the trial court's implicit finding that the defendants' failure to appear at trial resulted from excusable neglect and/or failure to receive notice of the trial setting. The record reflects that neither party had filed any pleadings in the case (other than the motion to withdraw) after Dobbins' October 2004 letter stating her intent to set the case for trial or, in the alternative, settle the case in exchange for an additional payment. Once the judgment was entered in March 2005, the defendants were then put on notice that Dobbins was insistent on pursuing her cause, that she did not intend to honor the settlement agreement, and that it was

---

[6]Rule 8.03 provides in pertinent part:

> In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, express assumption of risk, comparative fault (including the identity or description of any other alleged tortfeasors), discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

Tenn. R. Civ. P. 8.03.

necessary to assert the defense of accord and satisfaction. The defendants possibly could have asserted the defense before the March 2005 trial had they known the trial had been scheduled, but counsel for the defendants had filed a motion to withdraw from the case in February 2005, and that motion was still pending at the time of trial. Under these circumstances, we conclude that the trial court did not err in permitting the defendants to raise the settlement agreement as an affirmative defense at that juncture.

Having found no error in the trial court's decision to permit the defendants to assert the settlement agreement as a defense, we next turn to Dobbins' argument that the trial court erred in enforcing the settlement agreement and in determining that an accord and satisfaction had been reached. As noted above, the trial court determined that the parties had entered into an agreement, that the agreement contained no deadline for payment, that payment was in fact made to Dobbins within a reasonable period of time, and that Dobbins accepted the payment, despite Dobbins' attempt to repudiate the agreement prior to the final payment. Under these circumstances, the trial court held that the defendants complied with the agreement by paying within a reasonable time, and even if payment was not made in compliance with the original agreement, Dobbins' acceptance of the second payment constituted an accord and satisfaction.

Dobbins argues on appeal that the trial court erred in determining that her acceptance of the payments tendered by the defendants constituted an accord and satisfaction in this case. She asserts that, by the time the second payment was made, she had repudiated the parties' original settlement agreement in her August 3, 2004 letter to counsel for the defendants. The defendants recognized this repudiation, she contends, in the August 23, 2004 letter from the defendants' counsel, enclosing the second payment. Thus, she claims, she made it clear to the defendants that she did not intend to accept the second payment as a satisfaction, and consequently there was no accord and satisfaction. In response, the defendants argue that, when one accepts a payment of a disputed amount made with an accompanying letter or other memorandum making an offer of settlement, then an accord and satisfaction of the debt occurs when the payment is accepted. Furthermore, they maintain, that under Tennessee law, one who has received a settlement and seeks to repudiate the settlement agreement must first tender back the money received under the agreement sought to be avoided. *See Smith v. Boyd*, 2 Tenn. App. 334 (1926). Because Dobbins did not tender the money back, the defendants argue, the trial court was correct in enforcing the settlement and in finding that an accord and satisfaction had been accomplished.

The defense of accord and satisfaction arises from a form of contract, discussed in CORBIN ON CONTRACTS:

> "Accord and satisfaction" is a term that states the legal consequence of a creditor's acceptance of a substitute performance for a previously existing claim or prior original duty. Acceptance of the substitute performance discharges the previously existing claim. A debtor's pleading and proving of the "accord and satisfaction" is a complete defense to an action by the creditor on the previously existing claim.

13 SARAH HOWARD JENKINS, CORBIN ON CONTRACTS § 70.1, at 301 (Joseph M. Perillo ed., 2003).

The Tennessee Supreme Court has described accord and satisfaction as follows:

> An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such an agreement.
>
> \* \* \*
>
> To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction. Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction.

*Lytle v. Clopton*, 261 S.W. 664, 666-67 (Tenn. 1924) (quotations omitted). Thus, accord and satisfaction is in essence a contract between the parties, which requires a meeting of the minds. In order to establish the defense of accord and satisfaction, the party asserting the defense must show that performance is offered by the debtor as a satisfaction of the obligation, and that the performance is accepted by the creditor as satisfaction of the obligation. Whether such offer and acceptance occurred is governed by the intentions of the parties, which must be determined from all the circumstances of the case. *Id.*

Dobbins relies on cases indicating that an accord and satisfaction cannot be reached where the payment made by the debtor is not accepted with the intent by the creditor that it satisfy the debt between the parties. *See, e.g., Tullahoma Concrete Pipe Co. v. Pyramid Concrete Co.*, 330 S.W.2d 578, 582 (Tenn. Ct. App. 1959). Dobbins correctly points out that, in order to establish accord and satisfaction, the evidence must show that the payments were made by the debtor with the intention of satisfying the debt, and *that the payments were accepted by the creditor with the intention that the payment operate as satisfaction*. "Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction." *Lytle*, 261 S.W. at 666-67. Because she made it clear to the defendants that she did not accept the second payment from the defendants with the intent that it satisfy the debt, Dobbins claims, the trial court erred in concluding that an accord and satisfaction had been reached in this case.

A situation that often occurs involving accord and satisfaction arises out of circumstances in which there is a disputed debt and the debtor sends a check to the creditor for less than the claimed full amount of the debt, with the check marked "paid in full" or the like. There is no antecedent settlement agreement; the debtor's proffer of the check is in effect an offer to settle the disputed debt. The issue then becomes whether the creditor's actions in cashing the check, as well as the creditor's accompanying actions such an marking through the notation on the check, indicate an intent to

accept the check as offered in complete satisfaction of the disputed debt. ***See, e.g., Sawner v. M.P. Smith Constr. Co.***, 526 S.W.2d 492 (Tenn. Ct. App. 1975); ***Lewis v. Modern Supply Co.***, 1986 WL 8999 (Tenn. Ct. App. Aug. 19, 1986); ***see also Ideal Stencil Mach. Co. v. Can-Do, Inc.***, No. 85-81-II, 1985 WL 4041, at \*4-\*5 (Tenn. Ct. App. Dec. 4, 1985). This type of accord and satisfaction is discussed in CORBIN ON CONTRACTS:

> [This] method of achieving the legal consequence of an accord and satisfaction is without a promise or promises but rather by the offer of a substitute performance that is accepted in discharge of the previously existing duty. . . . In such cases, the new transaction is wholly executed at the very moment of the acceptance of the performance. The substituted performance is fully rendered and the antecedent debt is discharged, leaving nothing more to be done by either party. The acceptance of the performance, usually in the form of a check . . . tendered in "full satisfaction" of some . . . disputed claim, is the satisfaction of the creditor's previous claim.

CORBIN ON CONTRACTS, *supra*, at 303 (footnote omitted). In such a situation, the creditor's actions surrounding the receipt and cashing of the check are frequently crucial to determining whether there was a meeting of the minds and both parties intended the check to be a satisfaction of the debt.

This case presents a different situation. It is undisputed that, prior to payment of any monies, the parties reached an agreement in writing to settle the lawsuit for a specific amount, $5,925.14. Accord and satisfaction in circumstances in which the debtor and creditor reach an agreement before the substitute performance is proffered is also discussed in CORBIN ON CONTRACTS:

> [A] creditor's acceptance of a substitute performance for a previously existing claim . . . can occur . . . by the formation of an enforceable contract . . . called an executory accord. The creditor promises to accept a future performance or receives a promise of future performance for the discharge of the original duty. When the accord is performed, the substitute performance is the satisfaction of the accord and the original duty is discharged. Consequently, we have an accord, the agreement, and the satisfaction, the performance. No acceptance subsequent to that for the formation of the executory accord is required. Indeed, a refusal to receive the agreed upon substitute performance is a breach of the accord.

CORBIN ON CONTRACTS, *supra*, at 301-03 (footnotes omitted). Thus, where the debtor has offered and the creditor has agreed to accept the substituted performance, an executory accord has been formed, and this contract can be enforced. This type of agreement is also addressed in the RESTATEMENT (SECOND) OF CONTRACTS:

> (1) An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty.
> (2) Until performance of the accord, the original duty is suspended unless there is such a breach of the accord by the obligor as discharges the new duty of the

obligee to accept the performance in satisfaction. If there is such a breach, the obligee may enforce either the original duty or any duty under the accord.

(3) Breach of the accord by the obligee does not discharge the original duty, but the obligor may maintain a suit for specific performance of the accord, in addition to any claim for damages for partial breach.

RESTATEMENT (SECOND) OF CONTRACTS § 281 (1981). The RESTATEMENT comments further address the effect of a breach of the executory accord by the creditor: "If a breach of the accord by the obligee prevents the obligor from performing the accord, the original duty is not discharged, but the obligor has a claim for damages for total breach of the accord. . . . [S]pecific performance of the accord will be granted unless for some reason that remedy is inappropriate." RESTATEMENT (SECOND) OF CONTRACTS § 281, cmt. c.

In this case, there was clearly an executory accord, *i.e.* a settlement agreement between the parties prior to performance. The correspondence between the parties establishes that Dobbins offered to settle the case if the defendants paid Dobbins' attorneys' fees to date, which then amounted to $5,925.14. By return letter, counsel for the defendants accepted this offer, noting that they would "need, however, until June 30 to have this money." At this point, then, there was an executory accord, enforceable by either party, although the exact date for payment was not stated. The parties' attorneys exchanged telephone calls, the first check was sent on July 14, 2004, and it was accepted. The July 14 letter indicated that the defendants' attorney expected that Dobbins would receive the final payment by July 29, 2004.

Dobbins argues that, because the second check was not sent by July 29, 2004, the defendants breached the settlement agreement and she effectively repudiated the agreement in her August 3, 2004 letter. Even after the second payment was sent to Dobbins, she maintains, the repudiation was effective, as recited in the defendants' counsel's October 6, 2004 letter to Dobbins' attorney.

This argument fails on two counts. First, the trial court found that the settlement agreement had "no time limits" and "no drop-dead deadline" for payment of the agreed amount. The trial court found that the defendants "in fact complied with" the agreement by making the required payments "within a reasonable period of time under the circumstances. . . ." From our review of the record, we find no error in these findings by the trial court. Therefore, there was no "breach of the accord by [the defendants] [so as to] discharge[] the new duty of [Dobbins] to accept the performance in satisfaction." RESTATEMENT (SECOND) OF CONTRACTS § 281(2). Consequently, Dobbins did not have cause to repudiate the executory accord.

Second, as noted by the trial court, at no time did Dobbins tender back either the first or second settlement payment made by the defendants. Dobbins' failure to tender back to the defendants either of these payments rendered her attempted repudiation ineffective. Tennessee adheres to the "tender rule," which recognizes that settlement agreements are binding until rescinded for cause, and that tendering back the consideration received is a condition precedent to the right to repudiate the settlement agreement. *See Smith v. Boyd*, 2 Tenn. App. 334 (Tenn. Ct. App. 1926). Requiring the return of any consideration paid is a widely recognized condition precedent for a party

seeking to avoid a settlement agreement. ***See Ming v. Ho***, 371 P.2d 379, 404 (Haw. 1962) (determining that "one who seeks to repudiate a settlement and throw the subject matter into the arena of litigation cannot at the same time claim the benefit of the agreement he is repudiating"); ***Stephenson v. Stephenson***, No. 220506, 2001 WL 965520, at *1 (Mich. Ct. App. Aug. 24, 2001) ("It is well settled law that settlement agreements are binding until rescinded for cause and that tendering back the consideration received is a condition precedent to the right to repudiate a contract of settlement."); ***Watson v. Bugg***, 280 S.W.2d 67, 69 (Mo. 1955) (in order to repudiate a settlement agreement that allegedly was based on fraud, plaintiff must tender back the consideration received in settlement); ***Doe v. Golnick***, 556 N.W.2d 20, 23 (Neb. 1996) (adhering to the "tender rule," requiring plaintiff who wishes to avoid a former settlement agreement in order to bring a medical malpractice lawsuit must tender back the consideration she received for signing the release); ***Swan v. Great N. Ry. Co.***, 168 N.W. 657, 663 (N.D. 1918) (following the rule that payment must be tendered back in order to repudiate a settlement agreement and sue on the original cause); ***see generally*** A. M. Srarthout, *Return or tender of consideration for release or compromise as condition of action for rescission or cancellation, action upon original claim, or action for damages sustained by the fraud inducing the release or compromise*, 134 A.L.R. 6 (1941).

Therefore, since the defendants did not breach the executory accord, but in fact performed under the agreement, and because Dobbins did not effectively repudiate the agreement, the defendants were entitled to "specific performance of the accord." RESTATEMENT (SECOND) OF CONTRACTS § 281, cmt. c. Consequently, the trial court did not err in granting the defendants' motion to enforce the settlement agreement.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Paulette Dobbins and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE