# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 27, 2015 Session

## CHERYL ERMA GREEN v. YMCA OF MEMPHIS AND THE MID-SOUTH

**Appeal from the Circuit Court for Shelby County**
**No. CT00260209      Gina C. Higgins, Judge**

_____

**No. W2014-02190-COA-R3-CV – Filed November 4, 2015**
_____

Appellant appeals the trial court's order enforcing a settlement agreement, arguing that the agreement was the product of coercion on the part of her attorney. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, J., and BRANDON O. GIBSON, J., joined.

Cheryl Erma Green, Memphis, Tennessee, Pro Se.

Eileen Kuo and James Hunter Stock, Memphis, Tennessee, for the appellees, YMCA of Memphis and the Mid-South.

## OPINION

### Background

Plaintiff/Appellant Cheryl Erma Green's employment with the Defendant/Appellant YMCA of Memphis and the Mid-South ("YMCA") was terminated on May 29, 2008. Exactly one year later, on May 29, 2009, Ms. Green, proceeding *pro se*, filed a complaint for "Violations of the Public Protection Act and Common Law Whistleblower Retaliation and Third Party Sexual Harassment" against YMCA and its employee Pete Shattuck, who was Ms. Green's immediate supervisor. On July 6, 2009, YMCA filed a motion to stay and extend the time for filing an answer and asserting

affirmative defenses, a motion for a more definite statement, and a motion to strike Ms. Green's complaint, all generally contending that Ms. Green's complaint lacked clarity and contained irrelevant and inflammatory factual allegations. On October 1, 2009, the trial court entered an order granting YMCA's request for a stay and directing Ms. Green to file an amended complaint. Ms. Green thereafter retained counsel and filed an amended complaint on October 9, 2009.

On October 15, 2009, the trial court entered a consent order of voluntary dismissal of the claims against Mr. Shattuck. On November 2, 2009, YMCA filed an answer to the amended complaint. On September 3, 2010, the trial court entered an order permitting Ms. Green's initial counsel to withdraw. Ms. Green apparently retained new counsel, and trial was set for March 12, 2012. YMCA took Ms. Green's deposition on November 15, 2011. Ms. Green was represented by her second attorney during the deposition. On January 10, 2012, however, the trial court entered a consent order permitting Ms. Green's second attorney to withdraw from the case.

Thereafter, on January 17, 2012, YMCA filed a motion for summary judgment, arguing that Ms. Green could not establish the essential elements of her claims. On March 8, 2012, the trial court entered an order continuing the trial date to allow additional time for discovery and for dispositive motions. At this time, Ms. Green was represented by her third attorney. The parties were ordered to appear for a status conference on May 2, 2012; however, the status conference was continued several times. Eventually, on October 23, 2012, the trial court entered an order re-setting the status conference for January 8, 2013 and ordering the parties to participate in mediation.

The case languished for several months until Ms. Green's third attorney was permitted to withdraw as counsel on July 16, 2013. The parties eventually attended mediation in an effort to settle the dispute. The first mediation was not successful. The parties participated in a second mediation on December 9, 2013; at this mediation, Ms. Green was represented by Attorney Stephen Biller, the fourth and final attorney to represent her during these proceedings. At the December 2013 mediation, the parties settled the dispute for an undisclosed sum and payment was remitted to Ms. Green. In consideration of the settlement, Ms. Green agreed to release all claims against YMCA.

After mediation, Ms. Green, without the advice and consent of her counsel, filed two motions for protective orders seeking to submit certain information to the court under seal. The motions also contained several allegations of misconduct against Attorney Biller. Both YMCA and Attorney Biller responded in opposition to Ms. Green's motions for protective orders. In addition, on June 11, 2014, Attorney Biller filed a motion to withdraw as counsel of record for Ms. Green. The trial court entered an order granting Attorney Biller's motion to withdraw on June 20, 2014.

2

On July 30, 2014, YMCA filed a motion to enforce the settlement agreement or in the alternative for summary judgment. On August 22, 2014, Ms. Green, proceeding *pro se*, filed a third motion for a protective order and to rescind the mediated settlement agreement. Ms. Green did not deny that she signed the mediated settlement agreement. Instead, Ms. Green asserted that the settlement agreement should be rescinded because her attorney had an undisclosed conflict of interest and the attorney coerced her into signing the agreement. Ms. Green indicated that she was willing and able to repay all settlement funds that were remitted to her by YMCA. Ms. Green, however, never returned any portion of the settlement proceeds to the trial court or YMCA.

On August 28, 2014, Ms. Green also filed an answer to YMCA's motion to enforce the settlement agreement. In her answer, Ms. Green asserted that Attorney Biller misled her as to the purpose of the mediation, as her objective was to return to work. According to Ms. Green, given "the deception from the inception and given the intensity of the mediation setting, Ms. Green felt as if she had no choice but to sign the agreement presented by [YMCA]." In support of her answer to the motion to enforce the settlement agreement, Ms. Green submitted a sworn affidavit detailing Attorney Biller's alleged conduct at the mediation.

On October 3, 2014, the trial court entered an order dismissing the case with prejudice "[u]pon Motion by [YMCA] to Enforce Settlement Agreement and it appearing to the Court that all matters in controversy . . . with regard to these parties have been settled[.]" The trial court's order did not specifically address Ms. Green's allegations of duress. On April 2, 2015, the trial court entered an amended order, which was identical to the first order, except that it also denied YMCA's request for attorney's fees. Ms. Green filed a timely notice of appeal.

## Issues Presented

Ms. Green raises one issue for our review, which is taken, and slightly restated, from her appellate brief: Whether YMCA's Motion to Enforce Settlement Agreement or in the Alternative for Summary Judgment was properly granted in light of evidence presented by Ms. Green in response to YMCA's motion. In its brief, YMCA also requested attorney's fees incurred in defending a frivolous appeal.

## Discussion

As an initial matter, we note that Ms. Green is proceeding *pro se* in this appeal. As this Court explained:

> Parties who decide to represent themselves are entitled
> to fair and equal treatment by the courts. ***Whitaker v.***

3

> *Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App. 1995).
>
> The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d at 227; *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d at 397. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Baxter v. Rose*, 523 S.W.2d 930, 939 (Tenn. 1975); *Winchester v. Little*, 996 S.W.2d 818, 824 (Tenn. Ct. App. 1998).

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903–04 (Tenn. Ct. App. 2003). Accordingly, we keep these principles in mind in considering Ms. Green's appeal. From our review of Ms. Green's appellate brief, however, we note that she has fully complied with Rule 27 of the Tennessee Rules of Appellate Procedure, in that her brief contains all required elements, including appropriate references to the record and citation to relevant authority. *See generally* Tenn. R. App. P. 27(a).

**Enforcement of the Settlement Agreement**

We, therefore, proceed to consider the substance of Ms. Green's appeal—whether the trial court erred in failing to set aside the settlement agreement. We first note that Ms. Green does not dispute that she signed a mediated settlement agreement in which she was paid a sum of money in consideration for releasing all claims against YMCA. "The judicial system favors the resolution of disputes by agreement between the parties." *Lovlace v. Copley*, 418 S.W.3d 1, 29 (Tenn. 2013) "Consent decrees, compromise and

settlement agreements, and agreed orders are favored by the courts and represent the achievement of an amicable result to pending litigation." *In re Estate of Williams*, No. M2000-02434-COA-R3-CV, 2003 WL 1961805, at \*11 (Tenn. Ct. App. Apr. 28, 2003).

"[S]ettlement agreements made during or in contemplation of litigation are enforceable as contracts." *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (citing *Ledbetter v. Ledbetter*, 163 S.W.3d 681, 685 (Tenn. 2005) (stating that "a mediated agreement is essentially contractual in nature"); *Harbour v. Brown for Ulrich*, 732 S.W.2d 598, 600 (Tenn. 1987) (stating that a settlement agreement may be "a binding contract, subject to being enforced as other contracts"); *Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000) (stating that "[a] compromise and settlement agreement is merely a contract between the parties to litigation and, as such, issues of enforceability of a settlement agreement are governed by contract law")); *see also Matlock v. Rourk*, No. M2009-01109-COA-R3-CV, 2010 WL 2836638, at \*3 (Tenn. Ct. App. July 20, 2010) ("An agreement reached after mediation which is reduced to writing and is signed by both parties is construed and enforced in the same manner as other contracts."). Because settlement agreements are subject to general contract law, they are "also subject to the same defenses that may be raised to defeat enforcement of other contracts." *Matlock*, 2010 WL 2836638, at \*3. Here, Ms. Green seeks rescission of the contract.

The Tennessee Court of Appeals has described the remedy of rescission as "the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination, . . . [.] It is the annulling, abrogation of the contract and the placing of the parties to it in status quo." *Stonecipher v. Estate of Gray*, No. M1998-00980-COA-R3-CV, 2001 WL 468673, at \*4 n.2 (Tenn. Ct. App. May 4, 2001) (quoting 22 Tenn. Juris., *Rescission, Cancellation and Reformation* § 1 at 34 (1999)). We recognize that rescission of a contract is an "extreme" remedy that courts should be hesitant to employ. *Loveday v. Cate*, 854 S.W.2d 877, 879 (Tenn.App.1992); *see also James Cable Partners v. Jamestown*, 818 S.W.2d 338, 343 (Tenn. Ct. App. 1991) (holding that rescission is a remedy which "should be exercised sparingly and only when the situation demands such"); *Robinson v. Brooks*, 577 S.W.2d 207, 208 (Tenn. Ct. App. 1978) ("[R]escission of a contract is not looked upon lightly. It is available only under the most demanding circumstances."). However, the decision as to whether a situation warrants rescission rests in the sound discretion of the trial court. *See Vakil v. Idnani*, 748 S.W.2d 196, 199 (Tenn. Ct. App. 1987).

The Tennessee Supreme Court has held that courts should only rescind contracts "'where some such element as actual fraud, accident, mistake or insolvency . . . appear to justify it.'" *Early v. St.*, 192 Tenn. 463, 474, 241 S.W.2d 531, 536 (Tenn. 1951) (quoting *McMillan v. Am. Suburban Corp.*, 136 Tenn. 53, 188 S.W. 615, 617 (Tenn. 1916)).

5

"Generally speaking, rescission is appropriate when a party has been induced to enter into a contract by fraud, duress or undue influence. It is also appropriate in other limited situations." ***B.L. Hodge Co. v. Roxco, Ltd.***, No. 03A01-9704-CH-00144, 1997 WL 644960, at *3 (Tenn. Ct. App. Oct. 16, 1997); *see also* ***Belote v. Henderson***, 45 Tenn. 471, 475 (1868) (involving duress); ***Atkins v. Kirkpatrick***, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991) ("Fraudulent misrepresentation can be a ground for the rescission of a contract."); ***Robinson v. Brooks***, 577 S.W.2d 207 (Tenn. Ct. App. 1978) (involving mutual mistake).

In this case, Ms. Green asserts that the contract should be rescinded on the basis of duress.[1] "Tennessee has long recognized that a contract, although valid on its face, may not be enforceable if it can be proved that the contracting party acted under duress." ***Holloway v. Evers***, No. M2006-01644-COA-R3CV, 2007 WL 4322128, at *8 (Tenn. Ct. App. Dec. 6, 2007). While many of the early cases involved acts performed under threat of physical harm, *see* ***Belote v. Henderson***, 45 Tenn. (5 Cold.) 471 (Tenn. 1868) (involving the sale of a horse under threat of arrest by military authority); ***Willard v. Willard***, 65 Tenn. (6 Baxt.) 207 (Tenn. 1873) (involving a shotgun wedding); ***Pride v. Baker***, 64 S.W. 329 (Tenn. Ch. App. 1901) (involving a deed executed under death threat), other forms of coercion can constitute duress. ***Holloway v. Evers***, 2007 WL 4322128, at *8 (citing ***Johnson v. Ford***, 245 S.W. 531, 540 (Tenn. 1922)). As explained by this Court:

> "Duress" is an unlawful restraint, intimidation or compulsion of another to such an extent and degree as to induce such other person to do or perform some act which he is not legally bound to do, contrary to his will and inclination. The alleged coercive event must be of such severity, either threatened, impending or actually inflicted, so as to overcome the mind and will of a person of ordinary firmness. To constitute duress, the danger must not only exist, but must be shown to have actually operated upon the mind, and to have constituted the controlling motive for the performance of the act sought to be avoided.

***Cummings Inc. v. Dorgan***, 320 S.W.3d 316, 331–32 (Tenn. Ct. App. 2009) (quoting ***Hardy v. Harris***, No. 01-A-01-9001-CH-00005, 1990 WL 61429, at *1–*2 (Tenn. Ct.

---

[1] As discussed *supra*, the trial court did not address Ms. Green's duress argument in its order enforcing the settlement. Although neither party specifically takes issue with the trial court's lack of specificity, we encourage trial courts to address the arguments raised by the parties when ruling on dispositive motions.

App. May 11, 1990)). The burden of proof lies with the party asserting duress. *Hardy*, 1990 WL 61429, at *2.

This Court considered a request for rescission of a contract due to duress in *Holloway v. Evers*. In *Holloway*, the plaintiff alleged that his business partners took advantage of his weak financial situation and health problems to coerce him into selling his portion of a jointly-owned business. *Holloway*, 2007 WL 4322128, at *9. The Court of Appeals, however, concluded that the plaintiff's allegations failed to show duress on the part of the business partners, as the plaintiff "presented no evidence of any wrongful or illegal act by [the business partners.]" According to the Court:

> The financial and health problems he was facing were unfortunate and undoubtedly caused him stress. However, they were not **caused by the defendants**, and many people are required to make business and other decisions while facing such problems. There is simply no evidence that some **action by the defendants** deprived [the plaintiff] of his free will to make the best decision he could in the circumstances.

*Id.* (emphasis added). Thus, the lack of action by the defendants was a determinative factor in the Court's conclusion that duress had not been shown.

In this case, the only allegations regarding duress pertain to Attorney Biller, rather than YMCA. Indeed, from our review of Ms. Green's response to the motion to enforce the settlement agreement and her appellate brief, Ms. Green directs no allegations of misconduct of any kind at YMCA.[2] Thus, much like in *Holloway*, even taking Ms. Green's allegations as true, "[t]here is simply no evidence that some action by [YMCA] deprived [Ms. Green] of h[er] free will to make the best decision [s]he could in the circumstances."[3] *Id.*; *but see Delgado v. UHS Lakeside, LLC*, No. 11-3111, 2013 WL

---

[2] At oral argument, Ms. Green asserted that several documents not contained in the record indicate that YMCA colluded with Attorney Biller to coerce Ms. Green into signing the settlement agreement. As we indicated at oral argument, however, documents that are not contained in the record on appeal cannot be considered by this Court. *See Limbaugh v. Mueller Refrigeration Co.*, No. M2007-00999-WCR3WC, 2008 WL 4378191, at *5 (Tenn. Workers Comp. Panel Sept. 26, 2008) (indicating that courts may not consider documents that were not "introduced to and admitted by the trial court"). Accordingly, there is nothing in the appellate record to suggest that Attorney Biller's actions should be attributed to YMCA.

[3] At oral argument, Ms. Green also indicated that Attorney Biller committed fraud in order to convince her to sign the mediated settlement agreement. Typically, contentions that are not supported by relevant argument and citation to authorities in the argument section of the appellant's brief are considered waived. *See Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). Regardless, Ms. Green's

4648294, at *7 (W.D. Tenn. Aug. 29, 2013), *appeal dismissed* (6th Cir. Apr. 9, 2014) (considering the actions of the plaintiff's attorney in determining whether duress had been shown) (discussed in more detail, *infra*).

Moreover, even considering the allegations regarding Attorney Biller, we cannot conclude that Attorney Biller's purported conduct at the mediation amounted to a "coercive event . . . of such severity, either threatened, impending or actually inflicted, so as to overcome the mind and will of a person of ordinary firmness." *Cummings*, 320 S.W.3d at 331. Here, Ms. Green alleges that Attorney Biller changed the strategy and desired outcome of the mediation from allowing Ms. Green to return to work to solely a request for damages. In addition, Ms. Green alleges that Attorney Biller did not allow her to speak during the mediation and informed her that her case could not be won due to the weakness of her deposition testimony. Ms. Green's affidavit, however, admits that prior to the mediation, Ms. Green was aware that she had the option to "walk[] away from the mediation." Indeed, the parties do not dispute that Ms. Green had previously participated in mediation with YMCA that did not result in a settlement. Neither party has cited any Tennessee caselaw directly on this subject. Our research has revealed, however, that the United States District Court for the Western District of Tennessee, applying Tennessee law, has previously considered this issue. *See Delgado*, 2013 WL 4648294, at *7. The Tennessee Supreme Court has indicated that, although not binding on Tennessee courts, we may utilize federal caselaw as persuasive authority. *Harris v. Chern*, 33 S.W.3d 741, 745 n.2 (Tenn. 2000). In *Delgado*, like in this case, the client alleged that her attorney coerced her into settling her case. *Delgado*, 2013 WL 4648294, at *7. The federal court held, however, that "communicating to his client the advisability of settlement a case"

---

fraud argument must fail for the same reasons as Ms. Green's duress argument: Ms. Green has simply asserted no fraudulent action on the part of YMCA. In order to establish a claim of fraud, the party asserting that claim must show that:

> (1) **the defendant** made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

*PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012) (emphasis added). As there is no allegation in the record on appeal that YMCA defrauded Ms. Green, Ms. Green cannot prevail on her argument that the settlement agreement should be rescinded due to fraud.

8

does not amount to duress sufficient to rescind a settlement agreement. *Id.* Following the persuasive authority presented in *Delgado*, Ms. Green's allegations, even taken as true, fail to show "unlawful restraint, intimidation or compulsion of another to such an extent and degree as to induce such other person to do or perform some act which he is not legally bound to do, contrary to his will and inclination." *Cummings*, 320 S.W.3d at 331. Accordingly, the trial court did not err in granting YMCA's motion to enforce the settlement agreement.[4]

## Frivolous Appeal

Under Tennessee Code Annotated Section 27-1-122 this court may award damages for prosecuting a frivolous appeal:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

YMCA argues that Ms. Green's appeal is frivolous pursuant to Tennessee Code Annotated Section 27-1-122 and contends that it is entitled to attorney's fees and costs incurred in defending this appeal.

A frivolous appeal is one that is devoid of merit, *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), or one that has no reasonable chance of succeeding. *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999); *Indus. Dev. Bd. v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). Thus, an appeal in which the reviewing court's ability to address the issues raised is undermined by the appellant's failure to provide an adequate record is deemed frivolous because it has no reasonable chance of succeeding. *Brooks v. United Uniform Co.*, 682 S.W.2d 913, 915 (Tenn. 1984).

---

[4] In its appellate brief, YMCA also argues that Ms. Green cannot rescind the settlement agreement because she has not returned the consideration that she received as a result of the settlement agreement either to YMCA or the trial court, citing *Smith v. Boyd*, 2 Tenn. App. 334, 338 (Tenn. Ct. App. 1925) ("It is the settled rule that where the plaintiff seeks to repudiate a settlement or adjustment of a claim for personal injuries, that a tender of the amount received in the alleged settlement must first be made."). Because we have determined that Ms. Green is not entitled to rescind the settlement agreement due to duress or fraud, we need not consider this argument.

9

Although Ms. Green was not ultimately successful, we do not conclude that this appeal was frivolous or taken solely for delay. Ms. Green's brief was fully compliant with Rule 27 of the Tennessee Rules of Appellate Procedure, and her argument was cogent. Furthermore, it appears that the trial court failed to specifically address Ms. Green's contentions in its order enforcing the settlement. Under these circumstances, we will not sanction Ms. Green for seeking redress in this Court, regardless of whether she actually prevailed in her appeal. Accordingly, we decline to award YMCA attorney's fees incurred in defending this appeal.

## Conclusion

The judgment of the Circuit Court of Shelby County is affirmed and this cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant Cheryl Erma Green, and her surety, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE